**UNITED STATES of America,**
**Appellee,**

v.

**Oscar BEAR RUNNER, Appellant.**

No. 74–1201.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1974.

Decided Sept. 5, 1974.

Ross, Circuit Judge, dissented and filed opinion.

Roger Finzel, Wounded Knee Legal Defense Committee, Sioux Falls, S. D., for appellant.

Ed Carpenter, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before LAY, HEANEY and ROSS, Circuit Judges.

LAY, Circuit Judge.

The defendant, an American Indian, was convicted of the crime of larceny in violation of 18 U.S.C. §§ 661 and 1153 in connection with the killing of a calf on the · Pine Ridge Indian Reservation in South Dakota. He was sentenced to two years probation and thereafter brought this appeal. On appeal he alleges three points of error: (1) the restrictions placed by the court upon his cross-examination of the government's principal witness; (2) the admission of evidence relating to the shooting of a second cow, an occurrence which was the subject of additional charges dismissed before trial; and ·(3) the inadequacy of the voir dire examination conducted by the trial judge. We reverse the conviction and remand for a new trial.

■■ Our review of the record and the law convinces us that defendant's first and second assignments of error are without merit. The evidentiary rulings questioned were well within the broad discretion granted to the trial judge in such matters. We have more difficulty, however, in assessing the validity of his challenge to the sufficiency of the voir dire examination. That challenge is twofold. He argues, first, that the questions asked by the court failed to adequately probe the possible effects of pre-trial publicity, and, second, that they were insufficient to. reveal any latent racial prejudices possibly entertained by the prospective jurors.

The defendant's first contention is based upon the fact that, in the months preceding his trial, several disruptive incidents involving American Indians had occurred in western and central South Dakota, most notably, the occupation of Wounded Knee.[1] Though the charges

---

1. Defendant's motion for a continuance before trial sets forth the background of events which received not only local attention, but national focus as well. Counsel stated:

This request for a continuance is not in respect to any delay or for dilatory tactics or any other reason. What has happened, Your Honor is aware of, that on Wednesday last a member of the Ogalala Sioux Tribe was killed, Mr. Pedro Bissonette. Since that time two BIA police officers on Sunday night were shot. This has all been publicized in the newspapers. And throughout this entire year there has been a great deal of attention to the Indians and the Indian matters as to various activities, starting with Custer, through Wounded Knee, the Custer Grand Jury, in August, all of which has brought these matters to the attention of the public and has charged the atmosphere with concern about Indian affairs. And coupled with the recent events this has only brought this matter very close. Yesterday's Rapid City Journal had a front page story regarding the shooting of the two BIA police officers. I have a copy of it if you have not see [sic] it or if Mr. Carpenter has not see [sic] it. The second page had

against the defendant concededly arose from events totally isolated from those which were the subject of publicity, he nonetheless argues that the trial court should have more thoroughly interrogated the prospective jurors with respect to the possible prejudicial effects of this publicity. The court made only the following inquiry:

> THE COURT: Has anyone else on the panel heard anything about the case?
>
> I would say at the outset that this is a non-Wounded Knee case. I do this at the risk of putting in too much importance of whether something is or is not Wounded Knee.
>
> I wouldn't care if this was as to Wounded Knee or not. I would want a fair and impartial jury regardless, and I would state this now so there won't be any conjecture being made. This is not related to this particular alleged incident or set of incidents.
>
> Now, again, no one has heard anything about this.

■■■■ There is no doubt that the trial judge has the duty to neutralize the effect of any known area of prejudice. The difficulty here is that the defendant did not submit any additional questions nor did his counsel seek leave to interrogate the jurors on the matter of publicity. It is fundamental that a defendant may not assert as error on appeal matters not complained of at trial. Skogen v. Dow Chemical Co., 375 F.2d 692 (8th Cir. 1967).

However, the defendant did seek to have the trial court ask additional questions of the jurors concerning the possibility of racial prejudice. The court's initial inquiry on this point was limited to the following:

> American Indians are on trial here, that is, they are Indians and they are Americans. I wouldn't care whether they are American Norwegians or Swedes. They are to be treated like men.
>
> Now, this can be cut both ways. Is there anyone here with a prejudice either way concerning American Indians to such an extent that these gentlemen could not get a fair and impartial trial before you; that is, does anyone of you have a prejudice either way? The United States has a right to have a fair trial as well as the Defendants. So, whatever way it goes, if you feel you are going to be prejudiced either way, I want to know about it right now.
>
> Is there anyone that has such a prejudice or such a feeling?
>
> All right. Negative.

Upon completion of the voir dire, the defendant expressed his dissatisfaction with this limited inquiry and sought to have the court examine the prospective jurors more thoroughly. The defendant submitted these additional questions:

> 1. Do you accept the idea that customs, actions and needs of those persons raised and living in an Indian culture can be different from the customs, actions and needs of those persons raised in a white culture?
>
> 2. Do you accept the idea that these customs, actions and needs of those persons raised and living in an Indian culture are just as valid as those customs, actions and needs of persons raised in a white culture?
>
> 3. Would any of you jurors have difficulty in accepting the idea that Indians have a right to and do hunt wildlife such as deer or rabbits on the reservation; that under reservation rules and regulations they are allowed to do this hunting at any time during the year, day or night?

---

an article about the attorneys, another article relating to the attorneys getting a restraining order by Judge Nichol. And all of these things are highlighted in the jury's minds and would tend to make them —and would tend to draw attention to the difficulties that have been encountered that the Indians have been engaged in and would tend to prejudice and charge the atmosphere so that these people in a completely unrelated matter would be adversely prejudiced by this action. . . .

Tr. at 18–19.

The court submitted the substance of the third question but refused to ask questions 1 and 2. Counsel again objected to the court's refusal to probe more thoroughly.

The court then agreed to ask what it considered the "gist" of the questions and stated to the panel as a whole:

When I asked you if you were in the position of the Defendants, now, I want to rephrase that in this way. I would want to know if you were either a Defendant or if you were the Government's attorney in this case or in any case, would you want anyone on the jury who has the frame of mind that you now have? Is there anyone who would not want anyone on the jury with the frame of mind that you each individually now have?

The defendant asserts this general form of questoning was inadequate and that the court erred by refusing to inquire more fully of the prospective jurors concerning possible racial prejudice.

The Sixth Amendment guarantees a criminal defendant the right to a "speedy and public trial, by an impartial jury. . . ." The importance of a truly impartial jury, whether the action is civil or criminal, has never really been questioned in this country. *See* Mima Queen and Child v. Hepburn, 11 U.S. (7 Cranch) 290, 3 L.Ed. 348 (1812) (Marshall, C. J.).

Unquestionably one of the most effective means of ensuring impartiality is the voir dire proceeding during which questioning will expose any latent bias entertained by prospective jurors. Such exposure is necessary if the parties are to be expected to exercise their challenges in an intelligent and informed manner. Justice White recognized this in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964):

The voir dire in American trials tends to be extensive and probing, operating as a predicate for the exercise of peremptories, and the process of selecting a jury protracted.

*Id.* at 218–219, 85 S.Ct. at 835.

A searching voir dire is a necessary incident to the right to an impartial jury. *See* Dennis v. United States, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950), and Morford v. United States, 339 U.S. 258, 70 S.Ct. 586, 94 L.Ed. 815 (1950) (where the Court upheld the right to inquire into political prejudice); and Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931) (where the Court upheld the right to inquire into racial prejudice).[2] However, it is fundamental that the trial court has broad discretion in deciding what questions to ask and that its rulings will not be reversed absent an abuse of discretion. Pope v. United States, 372 F.2d 710, 723–727 (8th Cir.

2. In his concurrence in Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), Justice Marshall noted:

Moreover, the Court has also held that the right to an impartial jury carries with it the concomitant right to take reasonable steps designed to insure that the jury is impartial. A variety of techniques is available to serve this end, see Groppi v. Wisconsin, 400 U.S. 505, 509–511 [, 91 S. Ct. 490, 492–494, 27 L.Ed.2d 571] (1971); Sheppard v. Maxwell, 384 U.S. 333, 357–363 [, 86 S.Ct. 1507, 1519–1523, 16 L.Ed. 2d 600] (1966), but perhaps the most important of these is the jury challenge. See, *e. g.*, Johnson v. Louisiana, 406 U.S. 356, 379, [92 S.Ct. 1620, 1642, 32 L.Ed.2d 152] (1972) (opinion of Powell, J.); Swain v. Alabama, 380 U.S. 202, 209–222, [85 S.Ct. 824, 829–837, 13 L.Ed.2d 759] (1965).

Of course, the right to challenge has little meaning if it is unaccompanied by the right to ask relevant questions on *voir dire* upon which the challenge for cause can be predicated. See Swain v. Alabama, *supra*, [380 U.S.,] at 221, [85 S.Ct., at 836]. It is for this reason that the Court has held that "[p]reservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury," Dennis v. United States, 339 U.S. 162, 171–172 [, 70 S.Ct. 519, 523, 94 L. Ed. 734] (1950), and that the Court has reversed criminal convictions when the right to query on voir dire has been unreasonably infringed. See, *e. g.*, Aldridge v. United States, 283 U.S. 308 [, 51 S.Ct. 470, 75 L.Ed. 1054] (1931) . . . .

*Id.* at 532–533, 93 S.Ct. at 853.

1967). The sufficiency of the court's question in this instance, and the propriety of its refusal to probe further, must be judged in the light of all of the attendant circumstances. Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), is the most recent Supreme Court case on the subject. In *Ham*, the defendant was a Negro, on trial for possession of marijuana. He requested that the following questions be asked on voir dire:

    1. Would you fairly try this case on the basis of the evidence and disregarding the defendant's race?

    2. You have no prejudice against negroes? Against black people? You would not be influenced by the use of the term "black"?

The trial court refused to ask these questions, and asked instead three questions specified in the South Carolina statutes:

    1. Have you formed or expressed any opinion as to the guilt or innocence of the defendant, Gene Ham?

    2. Are you conscious of any bias or prejudice for or against him?

    3. Can you give the State and the defendant a fair and impartial trial?

The Supreme Court reversed, noting that, in view of *Aldridge, supra,* the defendant was entitled to have the subject of racial prejudice inquired into. However, the Supreme Court noted that the questioning need not assume any specific form, nor must the court ask any particular questions on the subject. Mr. Justice Rehnquist stated that "either of the brief, general questions urged by the petitioner would appear sufficient to focus the attention of prospective jurors on any racial prejudice they might entertain." *Ham, supra,* 409 U.S. at 527, 93 S.Ct. at 850. We view this statement as an expression of the minimum requirement, and not as a limitation on a more extensive inquiry *where the facts warrant it.* As the first Mr. Justice Harlan said, speaking for a unanimous Court, the right to challenge is "one of the most important of the rights secured to the accused" and that "[a]ny system

for the empanelling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right must be condemned." Pointer v. United States, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). *See also* Lewis v. United States, 146 U.S. 370, 376, 13 S.Ct. 136, 36 L.Ed. 1011 (1892).

    ██ In the instant case, the court's single question concerning racial bias was not only general in scope but was made to the prospective veniremen as a group. The effect was more like a monologue by the court than a probing examination of the jurors. Although the use of general questions has been approved by this court, *see* United States v. Thompson, 490 F.2d 1218 (8th Cir. 1974), and United States v. Powers, 482 F.2d 941 (8th Cir. 1973), cert. denied, 415 U.S. 923, 94 S.Ct. 1426, 39 L.Ed.2d 479 (1974), the better practice in a sensitive case is to direct probing questions touching areas of possible prejudice to each individual juror, with the questions to be asked by the trial judge or counsel. Individual questioning is particularly necessary when the overall circumstances and surroundings suggest the possibility of racial bias.

    ██ Here both the trial court and counsel were well aware of the recent events involving members of the Indian race. This trial commenced in the latter part of October, 1973. The well-publicized events of Wounded Knee took place in the spring of 1973 in the same general locality. The feelings of the local citizenry ran high. We take judicial notice of the fact that the criminal charges against those American Indians involved in Wounded Knee were moved by the court out of the Deadwood locale. We conclude under these circumstances there existed a sincere concern over prejudicial issues and that a general rhetorical question asking if the jurors would be fair and unbiased toward the defendant was of questionable sufficiency. *Cf.* United States v. Dellinger, 472 F.2d 340, 366–368 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973). Under these circumstances it would have been a much

better practice for the court, or counsel with the court's permission, to have examined each of the prospective jurors on an individual basis in these sensitive areas. The use of general questions such as that employed by the court here was recently looked upon with disapproval by the Supreme Court of Arkansas in Cochran v. State, 505 S.W.2d 520 (Ark.1974) where that court observed:

" . . . All trial lawyers, and all students of the science of jurisprudence, know that *general* questions directed to the jury panel, or to individual jurors, by a judge who at the beginning of the trial has no special information regarding the issues, or the relationship of the parties, or the attending circumstances, sometimes fail to elicit answers which may cause even the most conscientious juror to reveal an existing prejudicial status."

*Id.* at 521.

With this view, we agree.

It is fundamental that any erosion of the right to extensively examine veniremen in order to secure a fair and impartial jury constitutes prejudicial error. The right, although firm and absolute, must always be considered in light of all the surrounding circumstances presented by the particular case. We conclude that fundamental fairness in the present case requires that a new trial be granted.

Judgment reversed.

ROSS, Circuit Judge (dissenting).

I dissent. In Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L. Ed. 1054 (1931), a judgment of conviction was reversed because the "court failed to ask *any* question [on voir dire] which could be deemed to cover the subject" of racial prejudice. *Id.* at 311, 51 S.Ct. at 472 (emphasis added). In Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), the Supreme Court held that nothing requires the trial court "to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." *Id.* at 527, 93 S.Ct. at 850. Indeed, the Supreme Court indicated that *either* of the general questions propounded by the petitioner in *Ham, see* p. 912, *supra,* would have been "sufficient to focus the attention of prospective jurors on any racial prejudice they might entertain." *Id.*

Here the trial court made general inquiries, *see* p. 910, *supra,* into the area of possible Indian prejudice. This Circuit has specifically approved the use of such general questions in a probe for bias, *see* United States v. Thompson, 490 F.2d 1218 (8th Cir. 1974) and United States v. Powers, 482 F.2d 941, 944 (8th Cir. 1973), cert. denied, 415 U.S. 923, 94 S.Ct. 1426, 39 L.Ed.2d 479 (1974), and expressly recognized that the scope of inquiry into an area of possible bias is a matter committed to the sound discretion of the trial judge, *see* United States v. Delay, 500 F.2d 1360 (8th Cir. 1974) and Pope v. United States, 372 F.2d 710, 727 (8th Cir. 1967), vacated on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968). Here the majority reasons that the facts in this case warrant deviation from the rules of the Supreme Court and our own Circuit in this respect. Yet the only "facts" advanced in support thereof are that the defendant is a member of a minority race which was involved in a widely-publicized incident in the same district in which the instant crime was committed and that a change of venue in another case was granted for charges arising out of the publicized event. I agree that it would have been preferable to ask individual jurors probing questions to determine possible bias. But under the rule announced in Ham v. South Carolina, *supra,* 409 U.S. at 527, 93 S.Ct. 848, 35 L.Ed.2d 46, and under the decisions of this Court heretofore cited, the failure to do so was not reversible error.