UNITED STATES, Appellee,

v.

James Theodore EAGLE, Appellant.

No. 78–1405.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1978.

Decided Oct. 24, 1978.

Rehearing and Rehearing En Banc
Denied Nov. 16, 1978.

**1194**

Bruce Ellison, Rapid City, S.D., for appellant.

Jeffrey L. Viken, Asst. U. S. Atty., Rapid City, S. D., for appellee; David V. Vrooman, U. S. Atty., Sioux Falls, S. D., on brief.

Before ROSS, Circuit Judge, HENLEY, Circuit Judge, and MARKEY, Chief Judge.*

MARKEY, Chief Judge.

Eagle appeals from jury convictions in the United States District Court for the District of South Dakota, Southern Division, for assault with a dangerous weapon and for assault resulting in serious bodily injury. We affirm.

---

\* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. § 113. Assaults within maritime and territorial jurisdiction

 Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

 . . . . .

 (c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both.

 . . . . .

## Fact Background

On September 4, 1977, Calvin Janis, a resident of the Pine Ridge Indian Reservation, saw his niece, who had no driver's license, driving his car in the town of Pine Ridge. He took the car and went to his sister's house, finding Eagle and one Wilbur Two Dogs there. Upon his arrival, Janis asked who had given his niece permission to take his car, and an argument ensued with Eagle over the car keys. Eagle fired two .22 caliber rifle shots in Janis's direction. The argument continued, Janis remaining seated. Eagle handed the rifle to Two Dogs, then grabbed it back and fired a third shot, striking Janis in the chest. Eagle was later arrested by tribal authorities on tribal charges, and lodged at the tribal jail pending FBI custody. Eagle was indicted (Count I) under 18 U.S.C. §§ 113(c) and 1153 (1976), and (Count II) under 18 U.S.C. §§ 113(f) and 1153 (1976).[1] At trial, the doctors who treated Janis described his injuries as sufficiently serious to result in death.

## Procedural Background

Eagle's trial was first set for the Western Division of the District. On April 3, 1978, Eagle moved that: (1) the case be transferred to the Second Division of the District of Minnesota, pursuant to Fed.R.Crim.P. 21(a), because of extreme prejudice within the District of South Dakota; (2) voir dire of each prospective juror be conducted by counsel individually and outside the presence of the public, the press and other prospective jurors, pursuant to Fed.R.Crim.P.

---

 (f) Assault resulting in serious bodily injury, by fine of not more than $10,000 or imprisonment for not more than ten years, or both.

 § 1153. Offenses committed within Indian country

 Any Indian who commits against the person or property of another Indian or other person . . . assault with a dangerous weapon, assault resulting in serious bodily injury . . . shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

 . . .

24, because of massive and highly prejudicial publicity involving Eagle over the past three years; (3) either Count I or Count II of the indictment be dismissed for multiplicity; and (4) the court appoint an expert to testify regarding the first two motions, to supplement the record concerning the effect of publicity. Thereafter, Judge Bogue disqualified himself, and the case was assigned to Judge Nichol, and transferred to the Southern Division. The motions were denied. Eagle having been tried and convicted, this appeal was filed, citing the denial of Eagle's motions as error.

### Issues

The issues are whether the trial court erred in denying Eagle's motion for: (1) transfer; (2) individual voir dire; (3) dismissal of Count I or Count II; or (4) appointment of an expert.

### OPINION

1. *The trial court did not err in denying the motion for transfer.*

In support of his motion for transfer, Eagle submitted copies of articles from the Rapid City Journal and Argus Leader Newspapers issued between June 27, 1975 and September 6, 1978, most concerning Eagle's alleged earlier crimes, American Indians, and the American Indian Movement. Eagle also submitted the results of a 1976 public opinion survey by the National Jury Project alleged to reveal "the extraordinary level of community prejudice against, and prejudgment of, the Defendant within the state of South Dakota."

 Fed.R.Crim.P. 21(a) requires transfer to another district "if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district." The evidence submitted by Eagle did not demonstrate that prejudice.

Of the fifty-plus newspaper articles submitted by Eagle, most pertained to the murder of two FBI agents at the Pine Ridge Indian Reservation on June 26, 1975, and appeared in the Rapid City Journal, the primary newspaper serving the Western Division of the District. Reassignment of the case to Judge Nichol resulted in a venue change of nearly 400 miles, to an area substantially outside Rapid City's media coverage. Defense counsel conceded that only a small amount of publicity relating to this case appeared in the Argus Leader, the primary newspaper serving the division from which the jurors were drawn. Only one of the submitted Argus Leader articles mentioned Eagle in connection with the Janis shooting, and it was published approximately eight months prior to jury selection.

The geographical separation of the Southern from the Western Division, and the hiatus between the date of the cited publicity and the date of jury selection, were sufficient to mitigate the potentially harmful effects of the publicity. *Mastrian v. McManus*, 554 F.2d 813, 817 (8th Cir. 1977), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977).

The 1976 survey was undertaken to determine whether the defendants charged with the Pine Ridge murders could receive a fair trial in any of five districts (including the District of South Dakota) in the Eighth Circuit. The Pine Ridge trial generated vast amounts of publicity and political and racial prejudice. In contrast, the Janis shooting was the result of a family squabble, with no political or racial overtones, and media coverage was minimal. The survey therefore did not establish the required prejudice in the present case. *See United States v. Long Elk*, 565 F.2d 1032, 1041 (8th Cir. 1977).

2. *The trial court did not err in denying the motion for individual voir dire.*

 To show that the impact of pretrial publicity required individual and segregated voir dire, Eagle cited the same survey and articles submitted with the motion for transfer. For the reasons stated above, the survey and articles did not establish such great prejudice as to require further transfer. Similarly, the survey and articles were

of insufficient impact to require individual voir dire. *Cf. United States v. Bear Runner*, 502 F.2d 908 (8th Cir. 1974) (where trial was a few months after the well-publicized Wounded Knee incident, and the court held general questions addressing prejudice of questionable sufficiency, stating preference, under the circumstances, for individual voir dire). Further, the trial court here permitted counsel to conduct voir dire, and accorded great latitude in interrogation. The prospective jurors were examined about their knowledge of the Pine Ridge incident, Eagle's connection therewith, and about possible prejudice against Indians. Of the three days needed to complete the trial, almost the entire first day was consumed in jury selection. The record shows that the present voir dire fully comported with the standards laid down by this court, and that the refusal to allow individual voir dire was not an abuse of the trial court's broad discretion. *United States v. Crow Dog*, 532 F.2d 1182, 1198 (8th Cir. 1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977); *Bear Runner*, 502 F.2d at 911–13.

3. *The trial court did not err in denying the motion to dismiss one of the counts for multiplicity.*

The test for multiplicity was stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Gavieres v. United States*, 220 U.S. 338, 342, [31 S.Ct. 421, 55 L.Ed. 489], and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in *Morey v. Com-*

*monwealth*, 108 Mass. 433: "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." Compare *Albrecht v. United States*, 273 U.S. 1, 11–12, [47 S.Ct. 250, 71 L.Ed. 505], and cases there cited. Applying the test, we must conclude that here, although both sections were violated by the one sale, two offenses were committed.

As this court recognized in *Kowalski v. Parratt*, 533 F.2d 1071, 1074 (8th Cir. 1976), *cert. denied*, 429 U.S. 844, 97 S.Ct. 125, 50 L.Ed.2d 115 (1976), the offenses charged must be in law *and* in fact the same offense, before a claim of double jeopardy can prevail. It is not sufficient, as Eagle alleges, that the offenses charged arise out of a single act. *Id.* at 1074.[2]

A literal reading of the statutes in question, and an examination of the legislative intent behind them, show the offenses here charged to be different as a matter of law. Section 113(c) requires use of a dangerous weapon and specific intent to do bodily harm; harm need not have actually resulted. Section 113(f) requires only that the assault shall have resulted in serious bodily harm; the assault need not have been committed with a dangerous weapon, or with intent to do bodily harm. Thus, as was said in *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, "each provision requires proof of a fact which the other does not."

Section 113, as enacted in 1948, did not provide for assault resulting in serious bodily injury. Paragraph (f) was added by the Indian Crimes Act of 1976, Pub.L.No. 94–297, 90 Stat. 585 (codified at 18 U.S.C. §§ 113, 1153 (1976)), to give substance to the inclusion of the offense in § 1153. H.R. Rep.No. 1038, 94th Cong., 2d Sess. 6, *re-*

---

**2.** Identity of the offenses in fact was found violative of the Double Jeopardy Clause in *Michener v. United States*, 157 F.2d 616 (8th Cir. 1946), *rev'd*, 331 U.S. 789, 67 S.Ct. 1509, 91 L.Ed. 1818 (1947) (*per curiam*). The Supreme Court's one paragraph opinion gave no reasoning, but simply cited *Blockburger* and *Albrecht v. United States*, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1926) as controlling.

*printed in* [1976] U.S.Code Cong. & Admin. News 1125, 1129–30. Though § 1153 was first enacted in 1948, assault resulting in serious bodily injury was not added until 1968 (other offenses were added in 1966 and 1976). 18 U.S.C. § 1153 (1976 ed.), Historical and Revision Notes. Prior to the 1968 amendment, an Indian could criminally inflict bodily injury, and receive, in response to that serious crime, a sentence of only six months, the maximum imposable by Indian courts. To ensure punishment in proportion to the gravity of the offense, jurisdiction was transferred to the federal courts. S.Rep.No. 721, 90th Cong., 1st Sess. 32, *reprinted in* [1968] U.S.Code Cong. & Admin. News 1837, 1866.

The enactment of the statutes in question over a period of years, and the provision by Congress for separate punishments, are compelling evidence that Congress intended the offenses to be different as a matter of law. *See United States v. Wright,* 581 F.2d 704, 706 (8th Cir. 1978).

4. *The trial court did not err in denying the motion for appointment of an expert.*

Eagle requested the appointment of Dr. Schulman, the sociologist who prepared the 1976 survey, pursuant to 18 U.S.C. § 3006A.[3] Eagle contends on appeal that, in light of the prejudicial publicity, denial of the motion was an abuse of the trial court's discretion.

 In the absence of clear and convincing evidence showing prejudice to the accused, refusal to authorize funds under § 3006A is not reversible error. *United States v. Washabaugh,* 442 F.2d 1127, 1130 (7th Cir. 1976); *see also United States v. Harris,* 542 F.2d 1283, 1315 (7th Cir. 1976). As set forth above, the record shows voir dire to have been thorough. Several jurors were excused for bias exposed by voir dire.

There is no evidence on this record that Eagle was prejudiced by the trial court's refusal to appoint Schulman. *Cf. United States v. Schultz,* 431 F.2d 907, 912 (8th Cir. 1970) (accused sustained prejudice when denied a psychiatrist's aid in full exploration of insanity defense).

Finding no error on the part of the trial court, we affirm the judgment.

Affirmed.

---

3. § 3006A. Adequate representation of defendants

. . . .

(e) Services other than counsel.—
(1) Upon request.—Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.