UNITED STATES of America, Appellee,

v.

William Harrison GIVENS, Appellant.

UNITED STATES of America, Appellee,

v.

Clarence FOX, Appellant.

Nos. 82–2397, 82–2445.

United States Court of Appeals,
Eighth Circuit.

Submitted May 20, 1983.

Decided Aug. 3, 1983.

James M. Rosenbaum, U.S. Atty., Thorwald Anderson, Jr., Asst. U.S. Atty., D.Minn., Minneapolis, Minn., Carol Eckersen, Legal Intern., for appellee.

Daniel M. Scott, Federal Public Defender, D.Minn., Minneapolis, Minn., Paul H. Grinde, Legal Intern., for appellant.

Before BRIGHT and McMILLIAN, Circuit Judges, and NICHOL,* Senior District Judge.

NICHOL, Senior District Judge.

William Harrison Givens, Clarence Fox and Betty Jean Williams were arrested and subsequently indicted for violation of 18 U.S.C. sections 2113(a) and (d), bank robbery. Betty Jean Williams pled guilty and agreed to testify truthfully in return for a promise that her maximum sentence would be three years imprisonment. Following a jury trial before the Honorable Edward J. Devitt, Givens and Fox were convicted of the offense charged in the indictment. Givens received a sentence of twenty years in

---

* The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota, sitting by designation.

prison and Fox received a fifteen year sentence. Each appellant raises a number of issues. For reasons set out more fully herein, we affirm the convictions.

### I.

At about 2:20 p.m. on July 12, 1982, a man carrying a sawed-off shotgun entered the First Federal Savings and Loan Branch (bank) at 2115 Lake Street, Minneapolis, Minnesota. Shortly thereafter, a second man entered the bank, went behind the counter and emptied the teller drawers of cash while the armed man held the bank employees at bay.

The robbers tripped two bank security systems in the course of their crime. The robbers activated the bank's surveillance cameras when they removed a package of "bait money" from a teller's drawer. The bait money itself was the second security system as it contained an exploding security pack. A teller heard the bait money explode about ten seconds after the robbers left the bank. The explosion spread a red dye on nearby objects, including one of the defendants.

One of the two tellers on duty, Ms. Rosalind Thomas, provided a description of each robber. In addition, Ms. Thomas identified appellant Fox from a photo display. Lester Harris, appellant Givens' parole officer, identified the other robber in a photo display as appellant Givens.

Betty Jean Williams, the third codefendant, drove the getaway car and testified as to events both prior and subsequent to the robbery. On the day of the robbery, the three defendants borrowed a car from David Jaeger, a friend of appellant Fox. The three codefendants then drove around the Minneapolis area to look for a suitable institution to rob. After concluding that the Lake Street Branch of the First Federal Savings and Loan was a suitable institution, Ms. Williams parked the car behind the building while appellant Givens and appellant Fox went inside.

Appellant Givens was covered with red dye when he returned to the car. The three codefendants then left the immediate vicinity and drove to an apartment building to divide the stolen money. One Daryle Peterson saw two black men and a black woman sitting on the apartment stairs splitting up stacks of money.

Two weeks later all three defendants were arrested by FBI agents. An agent advised each defendant of his or her *Miranda* rights and the defendants were taken into custody. Ms. Williams admitted that all defendants used Talwin and amphetamines in addition to smoking marijuana on various occasions.

Both appellants assign as error the trial court's failure to grant defense motions for severance. In addition, appellant Givens raises the following assignments of error: (1) the trial court erred in admitting identification testimony given by appellant Givens' parole officer; (2) the trial court denied appellant Givens a fair trial by its refusal to inquire adequately into racial prejudice during voir dire of the jury panel; and (3) the trial court abused its discretion by permitting a grossly improper cross-examination of Jesse Anderson and thus denied appellant Givens his right to a fair trial. Appellant Fox makes the following additional assignments of error: (1) the trial court erred in denying appellant Fox's suppression motion; and (2) the trial court erred in failing to order disclosure of the identity of the confidential reliable informant.

### II.

A. Severance Motions.

 Both appellants allege that the trial court abused its discretion by failing to grant their respective motions for severance. We cannot agree. In order to prevail on a claim that the district court abused its discretion in denying a motion for severance, a defendant "must make a showing of real prejudice by demonstrating that the jury was unable to compartmentalize the evidence as it related to her and her codefendant. Such a demonstration requires more than a mere showing of a better chance of acquittal at a separate trial."

*United States v. Milham,* 590 F.2d 717, 722 (8th Cir.1979) (citations omitted).

▇ In this case the prosecution linked specific evidence to one defendant or the other at the time the evidence was introduced. Furthermore, the trial judge gave cautionary instructions on this point. In view of the foregoing, we cannot hold that the jury was unable to compartmentalize the evidence as it related to Givens and Fox.

**B. Voir Dire.**

Appellant Givens also argues that the trial court denied him a fair trial by its refusal to inquire adequately into possible racial bias during voir dire. Givens requested that the trial court ask five specific questions concerning racial bias during voir dire. Instead the trial court asked two general questions on that topic.

▇ Of course "(a) searching voir dire is a necessary incident to the right to an impartial jury." *United States v. Bear Runner,* 502 F.2d 908, 911 (8th Cir.1974). Yet it is also "fundamental that the trial court has broad discretion in deciding what questions to ask and that its rulings will not be reversed absent an abuse of discretion." *Id.* The sufficiency of the voir dire must be judged in light of all the attendant circumstances. *United States v. Archie,* 656 F.2d 1253, 1261 (8th Cir.1981) (citations omitted).

▇ In the case at bar there is no indication that the trial or the incidents which gave rise to the trial were well-publicized or had unusual potential for racial prejudice. *Cf. United States v. Bear Runner,* 502 F.2d 908 (extensive pretrial publicity); *Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931) (black person charged with the murder of a white person). While the voir dire might have been more extensive and probing with regard to racial attitudes, we believe it met the minimum requirements set forth in *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973).

**C. Identification Testimony.**

▇ Givens claims the use of lay opinion testimony from his federal parole officer denied him the right to effective cross-examination as guaranteed by the Sixth Amendment to the Constitution. Givens' parole officer, Lester Harris, testified that he knew Givens and then identified Givens in the courtroom. Harris was then shown Government Exhibit 10, a bank surveillance camera photograph, and asked if he recognized anyone in the picture. Harris responded that he did recognize one of the persons as William Givens.

While other courts have held admission of such evidence to be error, *see, e.g., United States v. Calhoun,* 544 F.2d 291 (6th Cir. 1976), we need not reach that issue. We need not determine whether it was error for the trial court to have admitted that testimony because, in our view, the conviction was unaffected by the error, if any. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Murray,* 523 F.2d 489, 491 (8th Cir.1975).

**D. Cross-examination.**

▇ Givens claims the trial court abused its discretion by permitting a grossly improper cross-examination of one Jesse Anderson, a witness called on behalf of Fox. During cross-examination, and without apparent foundation, the prosecutor asked the witness if he had ever sold drugs to Fox. Fox objected immediately. Givens, however, did not object nor cross-examine the witness. Witness Anderson later admitted some drug activity, although not with either codefendant.

In responding to the question, the witness noted the impropriety of the question and never did answer the question. Although the question was improper, in light of the response made by the witness, we cannot say that the mere asking of that question constituted prejudicial error.

**E. Suppression Motion.**

▇ Fox claims his statements given to FBI agents after his arrest should have

been suppressed because they were given while he was under the influence of intoxicating agents and because FBI agents induced the confession with promises of methadone, a drug used to ease withdrawal symptoms.[1] Fox's suppression motion was denied following a pretrial hearing.

The evidence clearly established that Fox used a variety of drugs on a regular basis and could have been intoxicated at the time of his interrogation. Custodial statements are not, however, per se involuntary because of intoxication. *United States v. Brown*, 535 F.2d 424, 427 (8th Cir.1976), *citing United States v. Harden*, 480 F.2d 649, 651 (8th Cir.1973).

The United States Supreme Court summarized the standard governing the admissibility of such confessions as follows:

> If an individual's "will was overborne" or if his confession was not "the product of a rational intellect and a free will", his confession is inadmissible because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure and, of course, equally applicable to a drug-induced statement.

*Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963) (footnotes omitted). The question of voluntariness necessarily turns on the totality of circumstances. *Boulden v. Holman*, 394 U.S. 478, 480, 89 S.Ct. 1138, 1139, 22 L.Ed.2d 433 (1969).

The trial court conducted a hearing on this issue and after considering the evidence and the demeanor of the witnesses found that Fox's statements were given voluntarily. The evidence supports that finding. We will not disturb it.

F. Remaining Argument.

██ We have considered the defendants' remaining argument that the trial court erred by failing to disclose the identity of a confidential reliable informant. The informant provided law enforcement officials with the location of the defendants. The

informant did not provide information as to the substantive offense. We hold that this argument has no merit and does not, in this case, warrant further consideration.

### III.

We have thoroughly reviewed the record in this case, and find that neither Givens nor Fox was prejudiced by the district court's trial rulings. The record supports the jury verdict, and accordingly, we affirm the district court's judgment.

---

1. A charge which was specifically denied by the FBI agents.