**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alan J. CASEY, Defendant–Appellant.**

**No. 86–2869.**

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1987.

Decided Nov. 13, 1987.

As Amended Dec. 10, 1987.

James M. Shellow, Shellow Shellow & Glynn, S.C., Milwaukee, Wis., for defendant-appellant.

Nathan A. Fishbach, Asst. U.S. Atty., Patricia A. Gorence, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, and POSNER, Circuit Judge, and WILL, Senior District Judge.[*]

BAUER, Chief Judge.

The defendant-appellant, Alan J. Casey, appeals his conviction on a three count indictment in the United States District Court. Count one charged Casey with conspiring to distribute, dispense, and possess with the intent to distribute, and to knowingly aid and abet the distribution, dispensation, and possession with the intent to distribute marijuana and cocaine in violation of 21 U.S.C. § 846. Count two charged the defendant with conspiracy to obstruct the IRS in its ascertainment and collection of federal income taxes in violation of 18 U.S.C. § 371 from May, 1978 through September, 1982.[1] Count three charged Casey with aiding and abetting in the possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Following his conviction, the defendant was sentenced to concurrent terms of twenty-five years on counts one and three, five years on count two and a special parole term of six years. For the reasons which follow we affirm Casey's conviction on all counts.

## I.

Beginning in 1977, the defendant initiated an illicit drug operation in Wisconsin supplied by large quantities of marijuana obtained in Florida. Four different witnesses, Dennis Bolles, Robert Diamond, Curt Schweitzer and James Grajek testified that they transported marijuana from Florida to Wisconsin by automobile for the

---

[*] The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. The appellant concedes his guilt on count two but maintains that errors committed by the district court necessitate reversal of his entire conviction.

defendant. The government also presented James Hartshorne and Jesse Swallow who testified to delivering payments in amounts of at least $50,000 on behalf of the defendant to his drug source in Florida, Donald Steinberg.

The defendant later substituted his Florida supplier and began purchasing marijuana from Robert "Fu" Sladon in 1979. Sladon testified that Casey purchased 1,200 pounds of marijuana "returns" on a monthly basis through the summer of 1980. Marijuana "returns", otherwise known as "garbage pot", constitute poor quality marijuana generally unacceptable to other purchasers. Sladon testified that he received final payment on Casey's purchases in February, March or April of 1981.

One of Sladon's assistants, Sheldon Pett, corroborated this testimony indicating that pursuant to Sladon's instructions he (Pett) provided "garbage pot" to Casey on a regular basis from March or April, 1979 until 1981 or 1982. Transportation of the marijuana purchased from Sladon was accomplished in the same manner as Casey's earlier purchases. Jesse Swallow, as well as four additional witnesses, testified to transporting defendant's marijuana from Florida to Wisconsin in motor vehicles.

Sladon also testified that he purchased small quantities of cocaine from Casey throughout the duration of the marijuana transactions. On one occasion, however, Sladon sold Casey between 36 and 38 pounds of cocaine for between $750,000 and $850,000. Jesse Swallow testified that he also purchased quantities of cocaine from Casey ranging between one-quarter pound to three pounds per transaction.

Count three of the indictment charging Casey with aiding and abetting in the possession of cocaine with the intent to distribute arose out of a transaction involving Swallow. Swallow testified that during the middle of December, 1980, he purchased one-quarter pound of cocaine from Casey in Deerfield, Wisconsin. Subsequently, Swallow drove to his home in Bristol, located in the eastern district of Wisconsin, where he transferred the cocaine to John Garcia.

## II.

The appellant raises a volley of objections against the proceedings below in asking that a new trial be granted. For the reasons that follow we decline Casey's request and confirm his conviction on all counts. While we have considered each of Casey's many claims, this opinion will be confined to the appellant's few meritorious, though unsuccessful arguments.

During voir dire the defendant asked the trial judge to make an inquiry of the jurors' potential biases toward illegal drugs. The court asked a series of questions to juror 51 (Norma Proctor):

The Court: I am just going to jump around here and ask some questions. And I don't mean to be picking on any particular jurors here, but I'm going to just randomly select a few to ask some questions to.

Ms. Proctor, you live in Waukesha?

Ms. Proctor: Yes, I do.

The Court: What do you think about marijuana and cocaine use these days? Do you have any feeling about that?

Ms. Proctor: I don't think anybody should put substances like that in their body that they don't need. Not good for your health. I don't smoke.

The Court: You're aware of the fact that Mr. Casey in two of the counts in this case—and there will be a lot of testimony in this case about drugs?

Ms. Proctor: Yes.

The Court: Cocaine, marijuana will be mentioned. Your feelings, your special feelings about it, do you think that will have any effect on your ability to be a fair and impartial juror in this case?

Ms. Proctor: It could, it could.

The Court: Tell me in what way it could?

Ms. Proctor: Well, if the evidence comes out that he, that he's selling to minors or children or anybody, I suppose.

The Court: Without knowing anything, the evidence in this case, I understand from your statement that you don't approve of the use of drugs, but if you hear evidence in this case about the

use of drugs, will you still be able to evaluate whether or not Mr. Casey is guilty in this case beyond a reasonable doubt of the charges against him?

Ms. Proctor: I would hope I will be able to determine, to judge. But I can't say whether I, you know, I think I would still be able to determine whether it was right or wrong or whether the evidence showed that he was guilty or not.

The Court then asked juror 39 (Tom Lindner) a similar series of questions:

The Court: .... Tom Lindner, what do you think of cocaine, marijuana?

Mr. Lindner: It's against the law. And it's against the law for a good reason. If it's proven that somebody is guilty beyond a shadow of a doubt, the person must suffer the consequences.

The Court: So I take it from what you say that you don't like the use of drugs, you don't approve of the use of drugs?

Mr. Lindner: You're correct.

The Court: Despite your feeling that you don't approve of the use of drugs, you think you'd be able to be a fair and impartial juror in a case involving drug charges?

Mr. Lindner: Yes, I do.

The court then addressed the other members of the jury?

The Court: Okay. Anyone feel differently than Mr. Lindner? In other words, anyone have such strong feelings about drugs that you may be inclined to convict the defendant in this case without being satisfied that the Government has proven him guilty beyond a reasonable doubt? Thank you, Mr. Lindner.

None of the remaining jurors responded affirmatively to the court's inquiry. The appellant's attorney objected to the court's general questioning of the jurors as a group and requested that individual examination be made of each juror. The trial court refused.

Casey also moved to strike jurors 39 and 51 for cause based upon an alleged manifestation of prejudice revealed by their stated attitudes toward drugs. Following the trial court's refusal to strike the jurors, Casey exercised two of the eighteen peremptory strikes granted him before the start of voir dire. Casey maintains that the trial court denied his sixth amendment right to a trial by an impartial jury by failing to strike the jurors for cause and for refusing to conduct an individual examination of the remaining veniremen.

We approach our review of the district court's voir dire with substantial deference premised upon the intimate familiarity afforded the trial judge in making factual determinations regarding juror prejudice. *See Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (finding of venireman's prejudice is based upon determination of demeanor and credibility that are peculiarly within a trial judge's province). Hence, we "will not find that a trial court abused its discretion in conducting voir dire where there is a 'sufficient questioning to produce, in light of the factual situation involved in the particular trial, some basis for a reasonably knowledgeable exercise of the right of challenge.' " *United States v. Mathews,* 803 F.2d 325, 328 (7th Cir.1986) (citations omitted). Under this limited standard of review, we decline to disturb the trial court's determinations.

■ The district court conducted a random questioning of jurors 31 and 59 specifically inquiring whether their negative opinion toward illegal drug use would impair their ability to evaluate the guilt or innocence of the defendant based upon the evidence presented at trial. Both veniremen expressed candidly their disapproval of drug use, but thoughtfully indicated an ability to determine the defendant's guilt or innocence based upon the evidence. Casey protests the court's refusal to strike these jurors for cause because they failed to unhesitatingly deny their negative views toward illegal drugs. The appellant, however, hardly is entitled to a jury devoid of disapproving sentiments toward drug trafficking. Rather, the trial court has discretion in evaluating the credibility and demeanor of veniremen in determining their ability to decide the pending case indepen-

dent of the beliefs that they hold. *See United States v. Jones*, 696 F.2d 479, 492 (7th Cir.1982), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983) (decision to strike a juror for cause is within the trial court's discretion). We are satisfied that Judge Evans properly exercised his discretion in refusing to strike the jurors for cause.

■ Casey's contention that the district court erred in failing to question the remaining veniremen individually is also unavailing. The court's inquiry of jurors 39 and 51 was conducted in the presence of the other jurors who were addressed as a group regarding their potential biases. The court's question explicitly incorporated the colloquy involving jurors 39 and 51 which elicited no affirmative response regarding an inability to decide the case solely on the evidence adduced at trial.

Citing the Eight Circuit's opinion in *United States v. Bear Runner*, 502 F.2d 908, 911 (8th Cir.1974), the appellant contends that because voir dire began at the height of media attention on drug use, individual examination of each venireman was required to secure an impartial jury. *Bear Runner*, however, involved an American Indian charged with larceny in the same general locality where several months earlier highly publicized events involving American Indians at Wounded Knee produced racial discord among the local citizenry. By contrast, there was little or no publicity surrounding the appellant's arrest and subsequent trial. Moreover, national attention to the long standing problem of drug trafficking is not likely to produce the type of concentrated local agitation prevalent in *Bear Runner*. In addition, our review of the record fails to reveal the type of actual agitation that warranted individual examination of the veniremen in *Bear Runner*. *See United States v. Hastings*, 739 F.2d 1269, 1273 (7th Cir.1984), *cert. denied*, 469 U.S. 1218, 105 S.Ct. 1199, 84 L.Ed.2d 343 (1985) ("[S]ince the record in the present case does not reveal a comparable atmosphere of recognized racial tension," there is no need to question jurors individually.). Hence, we conclude that the district court's

voir dire constituted sufficient questioning to produce some basis for a reasonably knowledgeable exercise of the right to challenge, and thus we find no abuse of discretion. *See United States v. Mathews*, 803 F.2d at 328.

### III.

■ Next, the appellant contends that the trial court erred by amending his indictment on counts one and three. Count one charged the defendant with participating in a drug conspiracy to distribute marijuana and cocaine. The court submitted the following verdict form to the jury:

> As to count one of the indictment, we the jury find the defendant Alan J. Casey _____ of conspiring to possess and deliver marijuana and _____ of conspiracy to possess and deliver cocaine as charged.

The appellant maintains that this verdict form improperly amended the indictment because it permitted the jury to convict the defendant on two different conspiracies instead of a single conspiracy with two different objectives as charged in the indictment.

Casey argues that "if the evidence shows multiple conspiracies when a single conspiracy has been charged, a conviction cannot be upheld unless the jury finds that one of the multiple conspiracies is the same as the single conspiracy charged in the indictment." *See United States v. Tramunti*, 513 F.2d 1087, 1107 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975); *United States v. Varelli*, 407 F.2d 735, 742–43 (7th Cir.1969). An examination of the record, however, indicates that no evidence was produced to prove a conspiracy other than the one that was charged or to convict the defendant of multiple conspiracies where only one was charged.

Moreover, throughout his communications with the jury, Judge Evans consistently indicated that count one involved a single conspiracy with two objects. The court referred to count one as "the offense of conspiracy to distribute marijuana *and* cocaine." The court also indicated that count one's verdict form involved a "conspiracy relating to marijuana and cocaine."

The court never communicated the notion of multiple conspiracies at any point to the jury. Additionally, Judge Evans's verdict form explicitly incorporated "count one of the indictment" thus reinforcing the concept of a single conspiracy contained therein.

At most Casey can demonstrate a variance between the indictment and special verdict form which was of no consequence to his defense. We have held that "[a] variance between allegations and proof is not fatal unless the defendant has been thereby deprived of an adequate opportunity to prepare a defense or has been exposed to a risk of being prosecuted twice for the same offense." *United States v. Kuna,* 760 F.2d 813, 819 (7th Cir.1985); *United States v. Kramer,* 711 F.2d 789, 795 (7th Cir.1983). The alleged deviation in Casey's special verdict form hardly prevented the preparation of an adequate defense or subjected him to double jeopardy where no evidence was adduced or argument made to demonstrate anything more than a single conspiracy as charged in the indictment. Accordingly, we dismiss the claim of variance. *See United States v. Williams,* 798 F.2d 1024 (7th Cir.1986).

■ Casey also claims that the trial court's verdict form erroneously amended count three. Count three charged the defendant with aiding and abetting the possession of four ounces of cocaine with the intent to distribute. The court tendered the following verdict form to the jury on this count:

> We the jury find the defendant Alan J. Casey _____ of aiding and abetting in the distribution of cocaine, as charged in count three of the indictment.

The defendant maintains that the verdict form improperly amended the indictment by changing the charge from aiding and abetting the possession with intent to distribute cocaine to aiding and abetting the distribution of cocaine.

Although it is clear that the court's verdict form varies from the initial charge, an indictment is improperly amended by "broadening the possible bases for conviction from that which appeared in the indict-

ment." *United States v. Miller,* 471 U.S. 130, 138, 105 S.Ct. 1811, 1816, 85 L.Ed.2d 99 (1985); *United States v. Kuna,* 760 F.2d 813, 817–18 (7th Cir.1985). While aiding and abetting possession with intent to distribute is not a lesser included offense of aiding and abetting distribution, the facts of this case and the evidence adduced at trial establish the inexorable relationship between the two. One may posit a scenario in which a drug broker aids and abets in the distribution of an illicit substance without assisting in its procurement or possession, *see, e.g., United States v. Jackson,* 526 F.2d 1236 (5th Cir.1976), however, nothing in the record even remotely suggests such a situation here.

The government produced evidence that Casey sold four ounces of cocaine to Jesse Swallow, thus establishing the defendant's participation in Swallow's possession. In order to prove that possession was taken with the intent to distribute, the government produced evidence of Swallow's actual distribution to John Garcia. No evidence was ever presented showing that Casey aided and abetted the transaction between Swallow and Garcia but through the initial sale of cocaine. Therefore, in finding that Casey aided and abetted distribution, the jury must have necessarily believed that Casey aided and abetted Swallow's possession with intent to distribute through the initial sale of cocaine. *Cf. United States v. Miller,* 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985); *Compare Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (impermissible variance where indictment charged interference with interstate shipment of sand and defendant convicted for interference with steel exports).

We agree with the appellees that, in this case, the court's verdict form did not broaden the possible bases for conviction but instead required the government to prove the actual distribution of cocaine rather than the mere intent to do so. *See United States v. Williams,* 798 F.2d at 1032 n. 2 ("at most, the alleged scope of the conspiracy was *narrowed* at trial, but this does not prejudice the defendants"). Moreover,

the defendant cannot and does not claim that he was surprised or otherwise disadvantaged in defending his case. The same facts support both charges. We therefore reject Casey's claim that his indictment was improperly amended by the court's jury verdict.

After considering all of the appellant's claims we affirm his conviction on each count.