Carl SANDERS, Petitioner–Appellee,

v.

Michael LANE, Director, Department of Corrections, State of Illinois, Respondent–Appellant.

No. 87–1782.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1987.

Decided Nov. 10, 1988.

David E. Bindi, Office of Illinois Atty. Gen., Chicago, Ill., for respondent-appellant.

Donald S. Honchell, Cook County Public Defender, Chicago, Ill., for petitioner-appellee.

Before FLAUM and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.[*]

FLAUM, Circuit Judge.

Following a jury trial in the Circuit Court of Cook County, Illinois, Carl Sanders was convicted of murder, armed robbery, home invasion, and two counts of attempted murder. After exhausting his state court appeals, Sanders filed a petition for a writ of habeas corpus in federal district court, claiming that the trial judge had violated his sixth amendment right to counsel by prohibiting him from having any contact with his attorney during a one-hour lunch recess that occurred during his testimony. The district court denied the respondent's motion for summary judgment on Sanders' habeas petition, and instead granted summary judgment in favor of Sanders. The district court ordered the state to release Sanders unless it began proceedings to retry him within 120 days. The judgment was stayed pending appeal.

On appeal, Lane contends that the trial court's sequestration order did not, absent a showing of prejudice by Sanders, violate Sanders' sixth amendment right to counsel.

---

[*] The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

In the alternative, Lane argues that any error committed by the trial court was harmless. We conclude that the trial court's order violated Sanders' right to counsel, but that the error was harmless beyond a reasonable doubt. We therefore reverse the district court's judgment granting Sanders' petition for a writ of habeas corpus.

## I.

On March 12, 1981, Sanders, along with Gregory Macon, Anthony Strong, and Lorenzo Strong, went to the home of Jessie and Barbara McGee. The four men stole a car, a television, a tape recorder, and some jewelry belonging to the McGees. During the course of the robbery Macon killed Jessie McGee and attempted to kill Barbara McGee and her son Joseph. Sanders admitted that he was present during the robbery, but claimed that he did not know that the others planned to rob the McGees. At trial, Sanders testified that as soon as he realized what was happening he tried to escape from the home, but Anthony Strong prevented him from doing so. Following a jury trial, Sanders was convicted of murder, armed robbery, home invasion, and two counts of attempted murder.

During the course of Sanders' testimony, the trial judge called a lunch recess during which Sanders was prohibited from having any contact with his attorney. The sequestration order was announced during an exchange between the trial judge, Sanders' counsel (Mr. Murphy), and the state's attorney (Mr. Hibbler), which took place as follows:

THE COURT: All right.

It is a quarter after. Lunch has been here about fifteen minutes. I don't want it to get too cold.

MR. MURPHY: I have only three questions [on redirect].

THE COURT: I will excuse the jurors for lunch until 1:15.

I want nobody to talk to the witness because he is still on the stand.

(Thereupon, the following proceedings were had outside the presence and hearing of the jury:)

MR. MURPHY: Judge, there is a case, Judge Epton overnight forbade an attorney to talk to his client. The case was reversed.

THE COURT: While his client was on the witness stand?

MR. MURPHY: While his client was on the witness stand.

THE COURT: What level was it, Appellate Court?

MR. MURPHY: Sure, it was Appellate Court.

MR. HIBBLER: What happened?

THE COURT: Once a witness takes the stand,—

MR. MURPHY: I give you my oath, I want to talk to him, but not about his testimony.

THE COURT: When a witness is on the stand, it is within the discretion of the Judge to sequester him, and not even his own attorney, not even the State, is allowed to talk to him.

MR. MURPHY: I respectfully take exception.

THE COURT: The order stands.

As ordered by the court, Sanders did not have any contact with his attorney during the one-hour lunch recess. After lunch the prosecutor asked two further questions (with the consent of defense counsel), defense counsel asked sixteen brief questions, and Sanders left the witness stand. Counsel then told the judge why he had wanted to talk with Sanders: to decide whether to call one final witness. He asked for "two or three minutes" to discuss the subject. The judge called a recess to allow Sanders and his lawyer to consult. They took the time they wanted and returned to court, informing the judge that the defense rested.

The Illinois Appellate Court reversed and remanded Sanders' attempted murder convictions because the jury had been improperly instructed on those charges. *People v. Sanders*, 129 Ill.App.3d 552, 84 Ill.Dec. 760, 472 N.E.2d 1156 (1st Dist.1984). The court affirmed Sanders' conviction in all other respects. The Illinois Supreme Court denied Sanders leave to appeal.

Having exhausted his state court remedies, Sanders filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254. Lane moved for summary judgment arguing that Sanders was not prejudiced by the sequestration order, and that therefore no sixth amendment violation occurred. Alternatively, he argued that even if a violation had occurred, the error was harmless beyond a reasonable doubt. The district court concluded that the trial court's order denied Sanders his sixth amendment right to counsel irrespective of a demonstration of prejudice and that this type of constitutional error cannot be subjected to a harmless error analysis. Thus, the district court denied Lane's motion and granted summary judgment in favor of Sanders on his petition for a writ of habeas corpus.

## II.

■ The issues on appeal are whether the trial court's order barring Sanders from speaking with his lawyer during a lunch recess violated his sixth amendment right to counsel and, if so, whether a harmless error standard should be applied. Analysis of these issues begins with the Supreme Court's decision in *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). In *Geders*, the trial court prohibited the defendant from having any contact with his lawyer during a 17–hour overnight recess that occurred between Geders' direct examination and his cross-examination. The Supreme Court acknowledged the longstanding practice of sequestering witnesses to prevent them from hearing the testimony of earlier witnesses and to prevent others from improperly attempting to influence a witness's testimony. Nevertheless, the Court held that the trial court's sequestration order violated Geders' sixth amendment right to counsel, reasoning as follows:

> [T]he petitioner was not simply a witness; he was also the defendant. A sequestration order affects a defendant in quite a different way from the way it affects a nonparty witness who presumably has no stake in the outcome of the trial. A nonparty witness ordinarily has

little, other than his own testimony, to discuss with trial counsel; a defendant in a criminal case must often consult with his attorney during the trial. Moreover, "the rule [on witnesses]" accomplishes less when it is applied to the defendant rather than a nonparty witness, because the defendant as a matter of right can be and usually is present for all testimony and has the opportunity to discuss his testimony with his attorney up to the time he takes the witness stand.

> . . . .

> There are other ways to deal with the problem of possible improper influence on testimony or "coaching" of a witness short of putting a barrier between client and counsel for so long a period as 17 hours. . . .

*Id.* at 88–89, 96 S.Ct. at 1335–1336.

The Court reversed Geders' conviction. The Court did not require Geders to establish that he was prejudiced as a result of the denial of counsel, nor did it engage in a harmless error analysis. Thus, in effect, the Court found a per se violation of the right to counsel and employed a rule of per se reversal. However, the Court specifically emphasized that an "order preventing a defendant from consulting his attorney during a brief routine recess during the trial day . . . is not before us in this case." *Id.* at 89 n. 2, 96 S.Ct. at 1336 n. 2.

In subsequent cases, every circuit that has considered the question has found that a bar on attorney-client consultation during even a brief recess can offend the sixth amendment. However, the courts are split concerning (1) the prerequisites for establishing a violation; and (2) whether a violation requires per se reversal or permits a harmless error analysis. *See United States v. DiLapi*, 651 F.2d 140 (2d Cir. 1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982) (five minute recess; per se violation but harmless error analysis used); *Perry v. Leeke*, 832 F.2d 837 (4th Cir.1987) (en banc), *cert. granted*, — U.S. ——, 108 S.Ct. 1269, 99 L.Ed.2d 480 (1988) (fifteen minute recess; defendant must show prejudice to establish viola-

tion); *United States v. Conway,* 632 F.2d 641 (5th Cir.1980) (lunch recess; per se reversal); *United States v. Bryant,* 545 F.2d 1035 (6th Cir.1976) (lunch recess; absent "extraordinary circumstances" prohibition of communication violates right to counsel, per se reversal if violated); *United States v. Vesaas,* 586 F.2d 101 (8th Cir.1978) (short recess; in dicta the court said "we have grave doubts that even a brief restriction on a criminal defendant's right to confer with counsel can be squared with the Sixth Amendment"); *Crutchfield v. Wainwright,* 803 F.2d 1103 (11th Cir. 1986) (en banc) (plurality), *cert. denied,* —— U.S. ——, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987) (short recess; sixth amendment violation only if defendant objects or indicates desire to consult with counsel, if so per se reversal); *see also Crutchfield,* 803 F.2d at 1111 (Tjoflat, J., concurring) (multifactor balancing approach to determine whether violation occurred).

As these cases demonstrate, the differences among the circuits seem to reflect several concerns. First, there is the basic notion that government must not prevent attorney-client consultations during trial.[1] Second, however, is the belief that some deprivations really are harmless, and thus there is concern about the broad sweep of a per se reversal standard. If one accepts that a per se rule is too broad, there are questions on how to limit it. Should the court constrict the circumstances under which a violation is established—i.e., look at factors such as the length of the recess or whether the defendant expressed a desire to confer; or require the defendant to show prejudice? Or should the court adopt a rule of per se violation and temper it by formal inquiry into harmless error? If the court permits a harmless error standard, will the right be eroded? These questions boil down to two issues: (1) what are the prerequisites to establish a violation; and (2) should a harmless error standard be applied? As will be seen, these two issues become somewhat intertwined in light of

conflicting messages from the Supreme Court. Nevertheless, we will address them in turn.

### III.

In *Geders,* the defendant was deprived of the assistance of his counsel overnight for a period of 17 hours. Under those circumstances, it was easy for the Court to determine that the defendant was deprived of the right to counsel. As the Court stated:

> It is common practice during such recesses for an accused and counsel to discuss the events of the day's trial. Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his [or her] client information made relevant by the day's testimony, or he [or she] may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events.

425 U.S. at 88, 96 S.Ct. at 1335.

*Geders,* however, was an extreme case, given the length of time that the defendant was deprived of counsel. In less egregious cases, the critical issue is whether it is possible to establish clear guidelines for courts to use in determining whether the specific deprivation violated the defendant's sixth amendment right to counsel.

One way would be to allow the court to look at the circumstances—the length of the recess, the degree of restriction, the status of the proceedings, the presence or absence of an objection—and to decide, based on those factors, whether there has been a sixth amendment violation. This approach attempts to build into the definition of the violation some of the considerations that would be pertinent in assessing harmless error. But the approach is essentially standardless, requiring courts to weigh a multitude of incommensurable factors. It might invite trial judges to

---

**1.** This is not to say that the government must *create* time for attorney-client consultation—e.g., the court is not required to grant a recess every time a defendant requests it. However, government must not prevent a defendant from conferring with his counsel during those times that are ordinarily used for consultation.

prohibit attorney-client conversations, it would subject defendants to inconsistent practices, and it certainly leaves the trial judge to guess at whether she has committed a constitutional violation. We reject this approach.

The second way would be to require the defendant to demonstrate prejudice. Whether to require such a showing is a difficult question, particularly in light of the Supreme Court's opinions in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and *Satterwhite v. Texas*, —— U.S. ——, 108 S. Ct. 1792, 100 L.Ed.2d 284 (1988). In *Strickland*, the Court seemed to suggest that prejudice to the defendant—whether demonstrated or presumed—forms the basis of any claim of denial of counsel or ineffectiveness of counsel:

> The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.
>
> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. *See United States v. Cronic*, *ante* [466 U.S.] at 659, and n. 25 [104 S.Ct. at 2047, and n. 25] [which cites *inter alia* to *Geders*]. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost....
>
> One type of actual ineffectiveness claim warrants a similar ... presumption of prejudice.... [P]rejudice is presumed when counsel is burdened by an actual conflict of interest....
>
> Conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to

a general requirement that the defendant affirmatively prove prejudice.

466 U.S. at 691–92, 104 S.Ct. at 2067. Similarly, in *Cronic* the Court stated:

> [T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.... There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.
>
> Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. [footnote:] The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. [citing *inter alia* to *Geders*].

466 U.S. at 658–59 and n. 25, 104 S.Ct. at 2046–47 and n. 25 (other footnotes omitted).

One can read these passages to mean that prejudice is presumed in cases of government denial or interference with counsel, while in cases of actual ineffectiveness the defendant must demonstrate prejudice. However, in another section of *Cronic* the Court tells us that the source of the constraint on counsel's performance—government as opposed to counsel himself—is irrelevant in deciding whether to presume prejudice or to require a showing of prejudice. 466 U.S. 648, 662 n. 31, 104 S.Ct. 2039, 2048 n. 31. Thus, assuming that prejudice is a component of the violation, we are left to wonder what the criteria are for determining whether to presume prejudice or to require a showing of prejudice.

Conversely, other Supreme Court cases indicate that prejudice—whether presumed or demonstrated—is *not* a required compo-

nent to establish a violation of the right to counsel. The most recent is *Satterwhite v. Texas,* —— U.S. ——, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), where the Court applied a harmless error standard to the sixth amendment violation set out in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In *Estelle,* the Court held that subjecting a defendant to a psychiatric examination in connection with a capital sentencing hearing without notifying the defendant's attorney violated the sixth amendment right to counsel. The Court did not require a showing of prejudice and did not state that prejudice was presumed. Subsequently, in *Satterwhite,* the Court held that *Estelle*-type violations would be subject to a harmless error inquiry. It would be logically inconsistent to assume that in an *Estelle* violation prejudice is legally presumed and yet to allow a harmless error inquiry. Unless one considers a presumption of prejudice to be rebuttable—which is contrary to every indication in the cases [2]—prejudice as an element of the violation and harmless error inquiry are mutually exclusive.[3]

Having identified the difficulties in reconciling the Supreme Court precedent on this subject, we conclude that a defendant need not demonstrate prejudice to establish a sixth amendment violation when a trial judge prohibits the defendant from speaking with counsel during a trial recess. We come to this conclusion for several reasons.

First, although *Strickland* and *Cronic* indicate that prejudice is a component in every right to counsel violation, the question of denial of counsel was not before the

Court, and we will not read more into those cases than what was held. We similarly refused to give *Strickland* and *Cronic* a broad reading in *United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011, 1016–1017 (7th Cir.1988) and *Siverson v. O'Leary,* 764 F.2d 1208, 1215–17 (7th Cir. 1985).

Second, the fact that *Strickland* says that prejudice was presumed in certain egregious denial or state interference cases does not necessarily translate into a requirement that the defendant must demonstrate prejudice in those cases where the circumstances are less egregious. We do not know whether prejudice was presumed in those cases because of the *egregiousness* of the circumstances or because of the *character* of the violation. If the presumption arose because of the character of the violation (state interference/denial as opposed to actual ineffectiveness),[4] then the question is settled: the defendant need not demonstrate prejudice in those types of cases. If, on the other hand, prejudice was presumed because of the egregious circumstances, we are back to square one: searching for a principled way to determine when the circumstances are such that prejudice should be presumed and when the circumstances are such that the defendant must demonstrate prejudice. Such standardless inquiry is unacceptable. Thus, neither alternative leads us to the conclusion that the defendant should be required to demonstrate prejudice in less egregious denial of counsel cases.

---

**2.** The idea of a rebuttable presumption has not been mentioned by the Court. On the contrary, the Court has said that prejudice is presumed in certain cases because "case-by-case inquiry into prejudice is not worth the cost." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. Obviously, if the presumption was rebuttable, case-by-case inquiry would be required.

**3.** We understand from *Strickland* that the term prejudice is used in the sense of outcome-determinative prejudice. 466 U.S. at 694, 104 S.Ct. at 2068. Thus, if prejudice is established or presumed, harmless error inquiry is foreclosed.

**4.** *Strickland* clearly can be read this way. *See* 466 U.S. at 692, 104 S.Ct. at 2067 ("Prejudice in these circumstances is so likely that case-by-case

inquiry into prejudice is not worth the cost. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent."). *But compare Cronic,* 466 U.S. at 659 n. 26, 104 S.Ct. at 2047 n. 26 ("Apart from circumstances of that magnitude, however, [e.g., complete denial of counsel] there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilty.") and n. 31.

Third, to the extent one reads the *Strickland* prejudice requirement as reflecting concerns about the difficulty in identifying a violation and about potential abuse of the appellate process, those concerns are not present here. In an actual ineffectiveness claim, the court is called upon to judge in retrospect an infinite variety of possible decisions of counsel. As the *Strickland* Court said, "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." 466 U.S. at 693, 104 S.Ct. at 2067. The effectiveness of assistance goes to the whole trial and a myriad of strategic decisions, and it is very difficult to say that at a particular moment a constitutional violation occurred. In a denial of counsel claim, on the other hand, the fact of denial is manifest. There is no reason to place a burden on the defendant to prove the violation. As the *Strickland* Court said, "such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because [government] is directly responsible, easy for the government to prevent." 466 U.S. at 692, 104 S.Ct. at 2067. Moreover, it would be unfair to place a burden on the defendant for an act of government over which neither counsel nor the accused has any control.

Fourth, placing a burden on the defendant raises what could have been a compelling objection to the prejudice component of *Strickland*—that placing the burden on the accused compels him to reveal attorney-client confidences. Examination and cross-examination of defense counsel has become common in actual ineffectiveness claims. The *Strickland* Court thought this acceptable, perhaps because of the overriding difficulties in identifying a violation based on a claim of actual ineffectiveness. But where the fact of denial is manifest, there is no justification for further intrusion into attorney-client confidences.

Finally, we do not think that prejudice—in the sense of outcome-determinative prejudice—is a necessary component in every right to counsel claim. While it is true that due process concerns underpin the sixth amendment guarantee of counsel and that the right to counsel primarily serves to insure a fair trial, *see Cronic*, 466 U.S. at 653–656, 658, 104 S.Ct. at 2043–45, 2046, that does not mean that a judicial order denying the defendant access to his attorney in the midst of trial is not a denial of counsel simply because the denial did not render the entire proceeding unfair. Due process concerns underpin other sixth amendment guarantees as well, yet we do not require a prejudice showing in every sixth amendment claim. For example, in a recent confrontation clause case the Court said, "[i]t would be a contradiction in terms to conclude that a defendant denied any opportunity to cross-examine the witnesses against him nonetheless had been afforded his right to 'confront[ation]' because use of that right would not have affected the jury's verdict." *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

Accordingly, we hold that any judicial order prohibiting conversations between an accused and his attorney during a trial recess violates the sixth amendment. The violation lies in the interference itself, and the defendant need not demonstrate prejudice.

## IV.

 Having determined that the sequestration order in this case violated Sanders' sixth amendment right to counsel, we come to the question of whether a harmless error standard should be applied. Several circuits have concluded that where a sequestration order violates the sixth amendment, reversal is automatic. *United States v. Conway*, 632 F.2d 641 (5th Cir. 1980); *United States v. Bryant*, 545 F.2d 1035 (6th Cir.1976); *Crutchfield v. Wainwright*, 803 F.2d 1103 (11th Cir.1986) (en banc) (plurality), *cert. denied*, —— U.S. ——, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987). Only the Second Circuit has followed a harmless error approach. *United States v. DiLapi*, 651 F.2d 140 (2d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982).

Early pronouncements from the Supreme Court do, indeed, support a rule of per se reversal. For example, in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), where the harmless constitutional error doctrine was first announced, the Court said that the right to counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Id.* at 23, 87 S.Ct. at 827–28; *see also Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978).

Recently, however, in *Satterwhite v. Texas*, ⸺ U.S. ⸺, 108 S.Ct. 1792, 100 L.Ed. 2d 284 (1988), the Supreme Court explained that not all violations of the right to counsel warrant per se reversal. In *Satterwhite*, the accused was subjected, without notice to his attorney, to a psychiatric examination in connection with a capital sentencing hearing. The defendant requested a per se rule that admission of the examining physician's testimony required a new trial. The Court wrote:

> Some constitutional violations ... by their very nature cast so much doubt on the fairness of the trial process that ... they can never be considered harmless. Sixth Amendment violations that *pervade the entire proceedings* fall within this category. *See Holloway v. Arkansas*, 435 U.S. 475 [98 S.Ct. 1173, 55 L.Ed. 2d 426] (1978) (conflict of interest in representation throughout entire proceeding); ....

Satterwhite urges us to adopt an automatic rule of reversal for violations of the Sixth Amendment right recognized in *Estelle v. Smith*. He relies heavily upon the statement in *Holloway* that "when a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the prosecution of a capital offense, reversal is automatic...." 435 U.S. at 489 [98 S.Ct. at 1181]. His reliance is misplaced, however, for *Holloway*, *Gideon [v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)], *Hamilton [v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961)], and *White [v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193 (1963)] were all cases in which the deprivation of the right to counsel *affected—and contaminated—the entire criminal proceeding.*

*Id.* 108 S.Ct. at 1797–98 (emphasis added). Thus, *Satterwhite* tells us that unless the deprivation contaminates the entire proceeding, reversal should not be automatic. Rather, the error should be evaluated under *Chapman's* harmless-error standard.

The sequestration order at issue in this case did not contaminate the entire proceeding. As stated above, defense counsel wanted to consult with Sanders during the lunch recess about whether to call an additional witness. Counsel was given the opportunity to consult with Sanders immediately following the conclusion of his testimony. After that consultation the defense rested. The error in prohibiting consultation during the recess was harmless beyond a reasonable doubt.

Accordingly, we reverse the district court's order denying respondent's motion for summary judgment and granting summary judgment to petitioner, and we enter summary judgment for the respondent.

REVERSED.