UNITED STATES of America, Plaintiff–Appellee,

v.

William COLONIA and Fanny Alvarez, Defendants–Appellants.

Nos. 87–2977, 87–2978.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1988.

Decided March 23, 1989.

Rehearing and Rehearing In Banc Denied April 27, 1989.

---

Thomas A. Durkin, Richard C. Moenning, Chicago, Ill., for defendants-appellants.

Lisa A. Huestis, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

William Colonia and Fanny Alvarez were arrested as a result of a Drug Enforcement Administration (DEA) surveillance in response to a tip concerning receipt of a large shipment of cocaine. They were convicted in a bench trial of having participated in conspiracy to possess and distribute cocaine and of possession with intent to distribute cocaine. We affirm.

## I.

In early May 1987, a confidential informant advised the DEA that William Colonia would receive a shipment of cocaine, and that Fanny Alvarez was involved with Colonia in cocaine distribution. On May 18 DEA agents began surveillance of the vicinity of Colonia's residence. Early that afternoon Colonia and Alvarez exited a Chicago apartment located at 4941 North Wolcott Street, and entered a blue Buick. Followed by agents in separate cars, the Buick traveled a circuitous route until Colonia and Alvarez had reached a parked Oldsmobile. Colonia entered the Oldsmobile and drove off in tandem with Alvarez in the Buick, both driving in an evasive fashion. Colonia then parked the Oldsmobile and re-entered the Buick with Alvarez and returned to the apartment with her. An agent remained at the parked Oldsmobile. A trained narcotics detector dog brought to the car gave an alert for the presence of narcotics.

Later in the afternoon of May 18, Colonia and Alvarez departed the 4941 Wolcott Street address and entered a Pontiac. Agents who were advised of the positive alert to narcotics in the Oldsmobile followed and intercepted the Pontiac. Upon the agents' arrest of Alvarez and Colonia, Alvarez told them she was in the process of purchasing the Pontiac. She declared that she owned a Buick and that her family previously had owned an Oldsmobile. When arrested, Colonia possessed keys to the Oldsmobile he had driven earlier that afternoon.

Both defendants were handed a DEA form card with their *Miranda* rights printed in Spanish. After Alvarez had read it she passed it to Colonia. At the time of their arrest, a nonoperative mobile telephone was taken from Alvarez.

Alvarez was read and given a waiver of rights form which she refused to sign. The agents then told Alvarez they would obtain a search warrant for her 4941 North Wolcott Street residence. She at first refused to give consent to the search. She was concerned about her children, and asked how long it would be before the police would eventually leave her home. Only after learning that the delay could be several hours did she finally sign the form giving consent to search.

The agents found two children and a baby-sitter in Alvarez's apartment. They also found $19,620 in United States currency, an "OHAUS" Triple Beam Balance Scale under the bed, a Colombian passport in the name of Alvarez, bearing Alvarez's photo, and 1.3 net grams of cocaine atop the refrigerator. The stipulated facts show that Fanny Alvarez was a resident at 4941 North Wolcott Street; that at all times Alvarez leased her apartment she used the name "Olga Silva"; and that the $19,620 in currency included no denominations over $50 and included $16,240 in $20 bills.

In the meantime, a search warrant was obtained for the impounded Oldsmobile. A search of that automobile (the day after the apartment search) revealed cocaine.

Following their trial without a jury the district court, in a thorough and well-reasoned opinion, found Colonia and Alvarez guilty of participation in a conspiracy to possess and distribute cocaine, and of possession with intent to distribute cocaine. On November 10, 1987, both defendants were sentenced to five years incarceration on each of these two counts to be followed by four years of probation, the sentences of these two counts to run concurrently.

II.

A. *Alvarez's Motion To Suppress Fruits Of Arrest*

Appellant Alvarez asserts that the district court erred in denying her motion to suppress the fruits of her warrantless arrest when it found there had been probable cause for her arrest. The constitutional validity of a warrantless arrest, especially one involving an informant-auto search situation, depends upon the probable cause to effectuate the arrest under the totality of circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *cf. United States v. Benevento*, 836 F.2d 60, 67 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988). On review we will uphold the trial court's findings of fact determined after a suppression hearing unless they are clearly erroneous. *United States v. Covelli*, 738 F.2d 847, 853 (7th Cir.), *cert. denied*, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984).

Alvarez argues that the confidential informant failed to specify her alleged involvement in Colonia's distribution of cocaine; that a delay between this original tip and the May 18 arrest undermines its reliability and the officers' credibility; that the agents' testimony of defendants' evasive driving tactics is spurious; and that the police dog's alert to the presence of narcotics in the Oldsmobile may have provided a foundation for Colonia's arrest but not Alvarez's because, unlike Colonia, Alvarez did not approach the Oldsmobile.[1]

1. Alvarez relies upon, and the United States distinguishes, *People v. Campbell*, 35 Ill.App.3d 196,

Close to this case is *United States v. Marin*, 761 F.2d 426 (7th Cir.1985). In *Marin* a confidential source informed the Drug Enforcement Administration on May 9, 1983, that Aida Barreto was distributing cocaine, and surveillance of Barreto began on May 16, 1983. Early on May 24 the confidential source informed the DEA that Barreto would begin distributing cocaine that day. Agents observed Barreto leave her residence to enter a Camaro and drive several blocks to pick up one Latin male and one Latin female passenger. Agents observed these three proceed in a circuitous manner to a building at a second address; there Barreto exited the auto to enter that building, returning several minutes later. Barreto then continued driving in a circuitous manner to the original address, whereupon the two Latins departed in the Camaro.

That afternoon Barreto left the first address in an Oldsmobile, driving in a circuitous fashion to a third address; there Hector Marin exited a building carrying a brown paper bag. Marin nervously entered the Oldsmobile, and he and Barreto drove in a roundabout fashion. Agents intercepted the Oldsmobile and made a protective search of Marin. The brown bag was found to contain cocaine.

Following a bench trial wherein Barreto and Marin were convicted of conspiracy to possess with intent to distribute cocaine, and of possession with intent to distribute cocaine, *id.* at 429, they appealed to this court. They contended that the DEA had lacked probable cause to stop and search the Oldsmobile. In *Marin* both defendants challenged the stop and search of the Oldsmobile on the ground that the officers had possessed insufficient knowledge to establish probable cause under the totality of the circumstances test, *id.* at 430, just as Alvarez challenges her arrest at the Pontiac. The two *Marin* defendants claimed that the DEA confidential source had no experience as an informant, and having provided no details or basis for the substance of his report the informant lacked credibility, and

that DEA surveillance had revealed only innocuous legal activity. *Id.* Nevertheless, this court determined that the *Marin* search was permissible. Citing *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), we concluded that "probable cause is a flexible, practical common-sense standard that requires facts sufficient 'to warrant a man of reasonable caution to believe that an offense has been or is being committed.'" *Marin*, 761 F.2d at 430. In *Marin* the DEA agents had personal contact with their confidential source, observed Barreto driving two different automobiles, and observed the circuitous driving as an obvious ploy to evade attempted surveillance.

Alvarez's argument is very similar to the one we rejected in *Marin*. She claims the informant's information did not implicate her, that the evasive driving pattern was innocuous, and that the dog detector alert did not connect her to the narcotics. But here, an agent testified that the informant was reliable and had been in contact both in person and by telephone. This informant provided physical descriptions of Colonia and Alvarez. Here, agents observed Alvarez in two different automobiles. In this case also, agents saw Alvarez engage in circuitous motoring.

DEA agents observing defendants such as Barreto or Alvarez are justified in drawing upon their experience to size up the actions which they observe in the context of information supplied by a known confidential source. *Marin*, 761 F.2d at 432–33. Activities like those of Alvarez are to be considered not in isolation but in perspective of all the circumstances known to the DEA agents. The relevant inquiry is not whether specific conduct is innocent or guilty, but the level of suspicion attaching to particular kinds of noncriminal acts. *Id.* at 432. The Oldsmobile stop and warrantless search in *Marin* were permissible under the Fourth Amendment. *Id.* at 433.

340 N.E.2d 690 (1975). That opinion was reversed in *People v. Campbell*, 67 Ill.2d 308, 10 Ill.Dec. 340, 367 N.E.2d 949 (1977), *cert. denied*,

435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978).

So too was the arrest and consequent search of Alvarez at the Pontiac.

### B. *Alvarez's Motion To Suppress Fruits Of Home Search*

Alvarez argues that the district court erred in denying her motion to suppress the fruits of the warrantless search of 4941 North Wolcott Street. The district court relied upon her voluntary consent to that search. The prosecution, seeking to rely upon consent to justify this warrantless search, bore the burden of proving that consent was freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). Voluntariness is ascertained from the totality of the circumstances. *Id.* at 226, 93 S.Ct. at 2047.

Alvarez argues that subtle coercion extracted her consent because she was distraught over her children. To Alvarez's mind, the officers characterized her refusal to consent as a mere delay of the inevitable.

Again the *Marin* discussion prefigures the facts surrounding Alvarez. Arrested at the Oldsmobile, Marin gave officers his home address and told them his wife might be near their home. Thereupon an officer located Mrs. Marin on the street near her apartment and told her that her husband had been arrested for possession of cocaine. He told Mrs. Marin, then four months pregnant, that if need be he would obtain a warrant to search her apartment. Perhaps half an hour later a Spanish translation of a consent to search form was delivered to the Marin apartment building

and Mrs. Marin signed it upon reading. DEA agents entering the Marin apartment uncovered a scale, approximately $7,000 in cash, and one kilogram of cocaine.

The *Marin* defendants argued that Mrs. Marin's consent to the search of the Marin apartment had been involuntary as coerced by fear. 761 F.2d at 433. This court accepted that the presence of the DEA agents, the knowledge of her husband's arrest, and the request to search her home could have upset Mrs. Marin. However, the court held that the voluntariness of her consent was not negated by her having been upset or having been told a warrant would be obtained if she withheld consent. *Id.* at 434.

In reviewing a lower court's findings of fact, this court does not consider the credibility of witnesses or the weight accorded their testimony, because that is the province of the trial court. A district court finding on the issue of consent is not disturbed by this court if not clearly erroneous. *Id.* at 433. Since the prosecution had presented more than ample evidence at the *Marin* suppression hearing to support the trial court's finding that Mrs. Marin's consent had been knowing and voluntary, the denial of the defendants' motion to suppress the cocaine seized at the Marin address was affirmed.

Here, after hearing the witnesses' testimony and observing their demeanor, the district court found the consent by Mrs. Alvarez had been knowing and voluntary.[2] The Alvarez consent is not nullified by the fact she may have been upset or had been

---

2. As stated by the district court in its opinion on the motion to suppress:

> Taking into account all of the circumstances surrounding Alvarez's execution of the consent forms, the Court finds her consent in the search of her apartment to have been freely and voluntarily given. The fact that the agents informed Alvarez that they were going to obtain a search warrant for the apartment does not render the consent invalid. (Citations omitted.) Similarly, Alvarez's concern that the presence of police officers for a substantial period of time at her apartment would disturb her children does not render involuntary her decision to shorten the period

> by giving her consent to the search. (Citations omitted.)
>
> Moreover, other factors militate in favor of a finding that the consent was voluntary. Alvarez is of sufficient age to make a reasoned decision. Although her native language is Spanish, she understood the agents' questions of her and never indicated any misunderstanding. Moreover, the consent form was presented to her in Spanish and she read the form carefully and asked questions about it. Most importantly, there is no evidence of coercion here.... Balancing all of these elements, the Court finds that the consent to search forms were executed freely and voluntarily.

told a warrant would be obtained even were she to deny consent.

## III.

### *Conspiracy of Colonia and Alvarez*

■ The indictment of Colonia and Alvarez charged that they "knowingly and intentionally did possess with intent to distribute approximately 1059 net grams of a mixture containing Cocaine, a Schedule II Narcotic Drug Controlled Substance. In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2." The district court's opinion of September 4, 1987, opens:

> The United States charged the defendants William Colonia and Fanny Alvarez in a two count indictment. Count I of the indictment charges the defendants with conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. Count II charges the defendants with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Likewise, the district court's conclusions of law open: "Count I charges the defendants with conspiracy to distribute cocaine and to possess cocaine with an intent to distribute it."

But that section of the conclusions of law, headed *Conspiracy to Possess and Distribute Cocaine*, concluded:

> The evidence against defendants in the instant case goes well beyond being slight as to their participation in the conspiracy charges within Count I of the indictment and the Court finds it is sufficient to prove that Colonia and Alvarez are GUILTY of having participated in a conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846.

Colonia seizes upon this discrepancy in language to assert that he was denied due process in his conviction of conspiracy to distribute. There is only one conspiracy charged in Count I, that being conspiracy to possess with "intent" to distribute. But Colonia recounts that the district court did not find him guilty of a conspiracy with "intent" to distribute, but of an offense not charged in the indictment: conspiracy to possess and distribute. He submits that conspiracy with "intent" to distribute is a crime very different from conspiracy to distribute.

However, the Judgment and Commitment Order signed by the trial court expressly declares: "Defendant has been convicted as charged of the offense(s) of knowingly, willfully and unlawfully and intentionally possess [sic] with intent to distribute cocaine, a Schedule II Narcotic Drug Controlled Substance. [sic] in violation of Title 21, U.S.C. 846 and 841(a)(1)." Colonia's argument, properly comprehended, is less akin to a miscarriage of the due process of law than to a slip of the tongue.

The miswording we find in this case is controlled by *United States v. Casey*, 835 F.2d 148 (7th Cir.1987). The *Casey* defendant maintained that his verdict form improperly had amended the indictment by revising the charge from aiding and abetting the possession with "intent" to distribute cocaine, to simply aiding and abetting the distribution of cocaine. *Id.* at 153. Yet the *Casey* defendant like Colonia, did not claim to have been thereby disadvantaged in mounting his defense. *Id.* at 154. In *Casey* as in Colonia's case, the same facts could support both charges. *Id.* We observe that the trial court here wrote exceptionally valuable and thorough opinions on both the preliminary motions to suppress and the trial itself. In line with *Casey*, we find Colonia's claim without merit.

## IV.

■ Colonia contends that the district court erred in basing its judgment of conviction upon tainted evidence by finding Colonia had been arrested with probable cause due to the informant's tip, the officers' observations, and the police dog alert. As explained in Section II, *supra*, Alvarez argued the facts to conclude lack of probable cause against *her*, although probable cause may have attached for the arrest of Colonia, given that Colonia had approached the Oldsmobile. Now Colonia argues the facts to conclude there was no probable cause for *his* arrest although there may

have been sufficient circumstantial evidence against Alvarez.

Colonia attempts to distinguish *Marin* because even the police dog narcotics alert could not establish Colonia's knowledge of the contents of the Oldsmobile. But Colonia's knowledge of these contents is cumulatively evidenced by (1) the informant's tip; (2) Colonia's approach to the Oldsmobile; (3) his circuitous driving of the Oldsmobile on the day in question; and (4) Colonia's otherwise curious partnership with a second party in the ride to the Oldsmobile and in their tandem roundabout motoring. Colonia's attempt to refute the probable cause for his arrest is without merit.

■ Colonia attempts to distance himself from the evidence obtained from Alvarez's apartment by recalling that the government informant stated that Colonia lived at 4941 North Wolcott Street, although when arrested Colonia possessed an identification card showing a different address. But even Colonia acknowledges that upon his arrest he gave his "current" address as 4941 North Wolcott Street. Colonia admits that he left the apartment with Alvarez at about 3:00 p.m. and again at about 6:00 p.m.; that he returned with her at 4:00 p.m. bearing some packages; and that Alvarez's husband Jose Perez was absent. Colonia's effort to distance himself from the fruit of the search of Alvarez's apartment, like his effort to distinguish *Marin,* is without merit.

Colonia and Alvarez argue that the evidence in the record fails to prove his or her respective guilt beyond a reasonable doubt, however strong the evidence against the opposite number. In our review of a contention that evidence at trial was insufficient to establish guilt beyond a reasonable doubt, we determine whether any rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt, viewing the evidence and every reasonable inference in the light most favoring the prosecution. *United States v. Rollins,* 862 F.2d 1282, 1287 (7th Cir.1988). The jury's verdict must be upheld if in this light there exists substantial evidence to support

it. It is not for this court to ascertain witness credibility or to weigh the evidence. *Id.* Upon our review of the evidence in the record, much of which has been recited above and in the district court's detailed opinion, we find each of these two claims to be without merit.

## V.

Alvarez calls for our review of the propriety of attorney representation before and during trial. She alleges that although the two attorneys who filed their respective appearances on behalf of Alvarez and Colonia were associated with one another in the Federal Defender Program, Inc., no inquiry regarding potential conflict of interest was made. Nor is any defendant's waiver of defense attorney conflict of interest present here.

Fed.R.Crim.P. 44(c) provides:

Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

■ Even a defendant's waiver of defense attorney's conflict of interest cannot always cure every problem created by multiple representation because federal courts have an independent interest in ensuring trials are proper and appear proper. *Wheat v. United States,* —— U.S. ——, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). This is a reason for Rule 44(c). *Id.* 108 S.Ct. at 1698. Some constitutional violations, like a conflict of interest in representation that pervades the entire proceedings, by their nature so compromise the appearance of trial fairness as never to be harm-

less.[3] *Sanders v. Lane,* 861 F.2d 1033, 1040 (7th Cir.1988). The presumption favoring a defendant's counsel of choice can be overcome not only by demonstrating actual conflict, but by demonstration of mere potential for conflict. *Wheat,* 108 S.Ct. at 1700.

 The long-prevailing rule in this circuit is that a judge is to inform a defendant of the character and importance of his right to conflict-free counsel, and guarantee that the defendant comprehends the consequences of a conflict and his entitlement to conflict-free counsel. While more extensive discussions may be valuable and are encouraged, it suffices that a defendant know the character of the risks at stake and proceed with his eyes open. *United States v. Roth,* 860 F.2d 1382, 1388–89 (7th Cir.1988). Yet simple failure to conduct a Rule 44(c) inquiry need not in itself require reversing a jointly represented defendant's conviction. Rule 44(c) aims primarily at prevention of actual conflict of interest in the joint representation case. Therefore, a district court's inadvertent lapse from compliance with Rule 44(c) is at least sometimes excusable when it is obvious that no such actual conflict exists. There is in at least some cases no reversible error for noncompliance with Rule 44(c) without actual prejudicial conflict of interest. 8B Moore, *Moore's Federal Practice* § 44.08[1], at p. 44–74 (2d ed. 1988).

 Ordinarily, defendants alleging ineffective assistance of counsel under the Sixth Amendment must demonstrate not merely that counsel's performance failed to meet minimal professional standards, but also that counsel's shortcomings were so prejudicial as probably to have changed the results of the trial. If, however, a conflict of interest affords the predicate for the ineffective assistance contention, the defendant bears a lighter burden regarding demonstration of prejudice. When a defendant (or his lawyer) provides the trial court with notice of an alleged conflict and the trial

court fails to investigate this conflict, a reviewing court presumes prejudice simply upon demonstrating possible prejudice. *United States v. Horton,* 845 F.2d 1414, 1418 (7th Cir.1988). But when the trial court has not been afforded notice of the supposed conflict, the defendant must demonstrate an actual conflict of interest which adversely affected his attorney's performance. *Id.*

 Failure here to comply with Rule 44(c) does not require a reversal of conviction. Alvarez failed to give notice to the trial court of the alleged conflict. Alvarez concedes, in raising the Rule 44(c) issue, that at no juncture in these proceedings has the record been sufficiently developed to determine whether a potential conflict rose to the level of actual conflict. Therefore, reversing Alvarez's conviction is not required here. This determination is particularly apposite here because the district court's opinion is notably thorough, and the trial judge was very alert to the details of this case.

The decision of the district court is AFFIRMED.

3. But even in this context, the point of *Sanders* is that not all violations of the right to counsel warrant per se reversal. *Sanders v. Lane,* 861 F.2d 1033, 1039–40 (7th Cir.1988). Reversal need not be automatic when the deprivation has not contaminated the whole proceeding. *Id.* at 1040. Error then can be evaluated under the harmless error standard. *Id.*