IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned On Briefs June 17, 2014

## STATE OF TENNESSEE v. JUSTIN DAVID FIFE

### Appeal from the Circuit Court for Montgomery County
### No. 40900409  John H. Gasaway, III, Judge

---

### No.  M2013-02211-CCA-R3-CD-Filed June 26, 2014

---

The Circuit Court of Montgomery County revoked the probation of Appellant, Justin David Fife, after he failed to report that he had been arrested for assault and was found to be in "constructive possession" of a handgun.  He argues on appeal that the gun was not his, that the discovery of the gun was the product of an illegal search, and that the trial court erred by denying his motion to suppress the evidence about the weapon.  After carefully examining the evidence, we affirm the Circuit Court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Michael T. Pugh, Clarksville, Tennessee, for the appellant, Justin David Fife.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; John W. Carney, District Attorney General; Chris Dotson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

-1-

*Factual Background*

On January 25, 2010, Appellant pled guilty to especially aggravated burglary and aggravated assault in the Circuit Court of Montgomery County. He was sentenced as a standard offender to eight years for the burglary and six years for the assault, with his sentences to be served concurrently on probation.

On April 26, 2010, a warrant for violation of probation was filed against Appellant, and he was subsequently taken into custody. He appeared before the trial court on September 9, 2010, and was found to be in violation of the conditions of his probation. He was returned to probation with time served (114 days). On February 22, 2012, a second warrant for violation of probation was filed against Appellant, and he was again taken into custody. On May 8, 2012, he waived a hearing and admitted the violation. He was again reinstated to probation with time served (77 days), but his probation was extended one year.

This appeal arose from a third warrant for violation of probation, filed against Appellant on December 5, 2012. The warrant stemmed from an incident which occurred at Appellant's home on November 28, 2012, and which also resulted in the filing of criminal charges against him. On that day, Appellant allegedly assaulted his girlfriend, Courtney Jones, at his home and threatened her by pointing a gun at her. After police arrived at the home, Ms. Jones described the assault to the police in detail and showed the officers a photo on her cell phone of the gun with which Appellant had allegedly threatened her. After a search, the police found a nine millimeter handgun hidden in a floor register in Appellant's bedroom, which matched the gun pictured on Ms. Jones' cell phone. A search of a floor register in Appellant's roommate's bedroom turned up a magazine with 33 nine millimeter rounds.

Appellant was arrested and was charged with aggravated assault and being a felon unlawfully carrying or possessing a weapon, as well as for violating his probation. A trial was scheduled for August 27, 2013. Prior to trial, Appellant filed a motion to suppress the evidence of the weapon he was charged with possessing. When the proceeding began, the prosecutor announced to the Circuit Court that the State would not pursue the criminal charges but would move forward on the probation violation.

The following day, the Court conducted a hearing on the suppression motion and the violation of probation. When Ms. Jones took the stand, she testified that she, rather than Appellant, was the owner of the weapon at issue, thereby contradicting her earlier sworn testimony at a preliminary hearing. When confronted on cross-examination with her earlier testimony, she testified that she had lied at the preliminary hearing because she was angry with Appellant and that "[t]he only thing that actually happened that day is me and him got

into a verbal argument, and I got mad because he was going back with his wife." She also insisted that although she had lied earlier, she was now telling the truth.[1]

Two police officers testified about the events of November 28, 2012, and were questioned closely about the circumstances of the search that led to the discovery of the weapon at issue. Officer Christopher Cunningham of the Clarksville Police Department was the first law enforcement officer on the scene. He testified that he was dispatched to an apartment because of a domestic dispute. When he arrived, he found Appellant and Ms. Jones arguing on the front porch. Ms. Jones told Officer Cunningham that Appellant had kicked her out of the house and that when she broke a window trying to get back inside to retrieve her property, Appellant "put a gun in my face." Officer Cunningham observed a broken window in front of the house. Because of the mention of a weapon, the officer asked Appellant if he could search him. Appellant allowed the search, but the officer did not find anything.

After further conversation, Officer Cunningham asked Appellant if he could search the residence for weapons. Appellant initially refused but then agreed to allow the search so long as Appellant was in the house with him. During the search, the officer found a brown briefcase-style bag beneath a pile of clothes in the living room. According to Officer Cunningham, once he picked up the bag, Appellant "got very antsy and immediately said he didn't want me to look into the bag." Officer Cunningham then set the bag on a table in the living room. Shortly thereafter, Appellant said he would let Officer Cunningham look through the bag if Appellant was allowed to open it. Officer Cunningham said he would not allow Appellant to open the bag.

Appellant then got up from the couch where he had been sitting and started walking towards the bag. Because of the change in Appellant's demeanor and the weapon allegations, Officer Cunningham placed Appellant in handcuffs and had him sit back down on the couch. Appellant then said that Officer Cunningham would have to get a search warrant if he wanted to finish searching the house. Officer Cunningham called his supervisor, Sergeant Lane, who told him to "hold everything." About 30 minutes later, Sergeant Lane and Detective Raymon Carroll arrived at Appellant's residence. They spoke to Appellant in the kitchen while Officer Cunningham remained out of earshot in the living room. After a ten minute conversation, Appellant agreed to a search and signed the consent form submitted by the officers.

The officers found a Tech Nine handgun in the floor register of Appellant's bedroom,

---

[1]To encourage Ms. Jones to continue testifying without invoking her Fifth Amendment privilege, the Court announced that it would not allow the prosecution of perjury charges against her.

which matched the photo that Ms. Jones had shown to Officer Cunningham. There was no magazine in the gun. Officer Cunningham asked Appellant's roommate, Danny Walker, who was also present, for consent to search Mr. Walker's bedroom, and Mr. Walker consented to the search. The officer discovered a magazine with 33 rounds in the floor register of Mr. Walker's bedroom. A search of the briefcase-style bag revealed two-way radios, flashlights, a box of nine millimeter ammunition that contained fourteen rounds, and one loose round. There was also a large empty pouch in the bag that, according to Officer Cunningham's testimony, was big enough to hold the Tech Nine handgun.

Mr. Walker gave a statement to Officer Cunningham on December 5, 2012, which was entered into evidence. Mr. Walker's account of the altercation between Appellant and Ms. Jones closely matches what Ms. Jones told Officer Cunningham on November 28, including that Appellant pointed a gun at Ms. Jones. Mr. Walker asserted that after the police were called, Appellant went upstairs with the gun and came downstairs without it. Mr. Walker also stated that he had seen the disputed weapon a week prior to the incident, sitting on a table in the living room, and that Appellant told Mr. Walker at that time that the weapon was his.

Detective Carroll testified that when he and Sergeant Lane asked Appellant for his consent to search the apartment, Appellant asked a few questions, such as how long it would take. They told him it would take a few hours. The officers also told Appellant that he had a right to withhold his consent but that if he did, they would apply for a search warrant and would probably be able to get one. Detective Carroll stated that the conversation was very calm and that Appellant "wasn't overly upset, but it -- as calm an individual could be with handcuffs on." Detective Carroll acknowledged that Appellant was not given his *Miranda* warnings and that he was not free to leave. Detective Carroll also testified that Sergeant Lane read the consent form to Appellant and that Appellant was allowed to examine it, which he did before signing.

Detective Carroll was also questioned about two phone calls that Appellant made from jail that the detective had listened to, and at the request of the prosecutor, he read from the transcripts that were made from audio recordings of those calls. Although the recipient of the call was not identified, it was apparent from the content that Appellant was talking to his estranged wife. The gist of those calls, stripped of their profanity, was that Appellant believed he could beat the charges against him if someone else could testify that the gun was theirs rather than his.

When Appellant took the stand, he testified that the allegations against him were false and that the gun was not his. He stated that he knew that Ms. Jones and Mr. Walker had said the gun was his at the preliminary hearing and that "whoever's gun it was, that they needed

to claim it." He was asked to explain at one point why he appeared to admit during one of his phone calls that he had bought the gun. He stated that his wife was very upset and that he lied to her because he didn't want to draw her attention to his relationship with Ms. Jones.

At the conclusion of the testimony and closing arguments, the Court announced its decision from the bench. The Court stated that after hearing all the testimony, it was convinced that "the consent to search, or permission to search as the document is entitled, was executed by [Appellant] freely and voluntarily." The Court went on to say that there was no evidence that the execution of the consent form was the product of coercion, duress, unfulfilled promises, or threats.

As for the question of the ownership of the weapon that was uncovered by the search, the Court found that not to be the dispositive factor. The Court observed that a felon is prohibited from being in possession of a weapon and that while ownership may indicate possession, one may also be in possession of property without holding actual title to it. The Court noted that when the gun was found in the heating register, it was in no one's actual possession and, therefore, the question had to be one of "constructive possession," meaning having the right or ability to exercise dominion and control over the weapon.

The Court noted that Appellant had a right to be in the house where the Tech Nine handgun was found because he was a tenant there. The gun was found in a room that he used as his bedroom. The Court accordingly concluded that Appellant was in constructive possession of the weapon in violation of the terms and conditions of his probation. The Court cited Appellant's history of repeatedly violating the conditions of his probation and ordered him to complete the unsatisfied portion of his eight-year sentence in confinement. This appeal followed.

*Analysis*

Both the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution protect against unreasonable search and seizure. Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003).

"One of the specifically established exceptions to both a warrant and probable cause is a search that is conducted pursuant to a voluntarily given consent." *Schneckloth v.*

*Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Cox*, 171 S.W.3d 174, 182 (Tenn. 2005). The question of whether an accused voluntarily consented to a search is a question of fact which focuses upon the totality of the circumstances. *Cox*, 171 S.W.3d at 181; *State v. Ashworth*, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999); *State v. McMahan*, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983). The burden of proof rests upon the State to show, by a preponderance of the evidence, that the consent to a warrantless search was given freely and voluntarily. *Schneckloth,* 412 U.S. at 248–49; *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *State v. Bartram*, 925 S.W.2d 227, 230 (Tenn. 1996).

Appellant contends that his consent to search was not voluntarily given but was the product of duress or coercion. He notes that he was asked to consent to the search while restrained in handcuffs and detained by two officers. Detective Carroll acknowledged that Appellant was not free to leave. He was, however, free to refuse consent. There was no evidence that Appellant was abused or threatened with abuse if he did not consent to the search. Further, Detective Carroll testified that the conversation about consent was very calm and lasted only about ten minutes. Sergeant Lane then read the consent form to Appellant, and Appellant was allowed to examine it before signing it. According to Detective Carroll, Appellant was aware that he had a right to deny consent, but he was told that if he did so, the officers would get a search warrant.

It has been held that "[b]aseless threats to obtain a search warrant may render consent involuntary. When the expressed intention to obtain a warrant is genuine, however, and not merely a pretext to induce submission, it does not vitiate consent." *United States v. White*, 979 F.2d 539, 542 (7th Cir.1992)) (citing *United States v. Duran*, 957 F.2d 499, 502 (7th Cir. 1992); *United States v. Colonia*, 870 F.2d 1319 (7th Cir. 1989)). In the present case, it appears highly likely that if Appellant had refused his consent, the officers would have applied for and obtained a search warrant. Ms. Jones had told Officer Cunningham that Appellant pointed a gun at her through a window of his home. Thus, the officers had probable cause to believe that a crime had been committed and that a search of the premises would have uncovered evidence of that crime, thereby justifying the issuance of a search warrant. T.C.A. § 40-6-104; *State v. Jacumin*, 778 S.W.2d 430, 431 (Tenn. 1989); *State v. Moon*, 841 S.W.2d 336, 337 (Tenn. Crim. App. 1992).

The trial court found that Appellant freely and voluntarily executed the consent to search document. This Court is obliged to uphold the trial court's findings of fact in a suppression hearing unless the evidence preponderates against them. *Ashworth*, 3 S.W.3d at 29 (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn.1996)). We have carefully examined the evidence, and we find that the evidence does not preponderate against the trial court's finding.

Moreover, even if Appellant's consent to search did not sufficiently meet the standard

of voluntariness to survive a motion to suppress in a criminal prosecution, the evidence resulting from such a search would not necessarily be barred under the exclusionary rule under the circumstances of this case. In *State v. Hayes*, 190 S.W.3d 665 (Tenn. Crim. App. 2005), this court determined that the exclusionary rule is not applicable in a probation revocation hearing unless the evidence is obtained as a result of police harassment or obtained in a particularly offensive manner. The reason is that "[v]iolation of probation suggests an individual is not prepared fully to enter society, so it is vital that 'all reliable evidence shedding light on the probationer's conduct be available during probation revocation proceedings.'" *Id.* at 669 (citing *United States v. Winsett*, 518 F.2d 51, 55 (9th Cir. 1975)).[2] There is no evidence in the present case that the police used offensive or harassing tactics to obtain Appellant's consent to search. So even if his consent had not been voluntarily given, the trial court would still have had the authority to decline to suppress the evidence of the weapon.

Appellant also argues that the trial court erred by revoking his probation on the basis of the discovery of a weapon that he insists was not his. He relies on the hearing testimony of Ms. Jones that she had lied to Officer Cunningham and again at the preliminary hearing when she said the gun belonged to him. But, as the trial court rightfully recognized, the dispositive question was not one of ownership but of possession. Tennessee courts recognize that "'possession' may be either actual or constructive." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); see also *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). A person constructively possesses an item when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App.1997)). Constructive possession has also been described as the "ability to reduce an object to actual possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). The evidence in this case suggests that Appellant could have reduced the Tech Nine handgun to his actual possession at any time by simply removing it from the floor register in his bedroom.

The trial court has the discretionary authority to revoke a defendant's probation if the proof shows, by a preponderance of the evidence, that the defendant violated the conditions of his sentence. T.C.A. § 40-35-310-311(e); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). On appeal, we will not disturb the trial court's decision to revoke probation absent an abuse of discretion. *Id.* The evidence showed that Appellant was in constructive possession of a weapon, in violation of the conditions of his probation. We therefore find that the Circuit

---

[2]Among the other rights that apply to criminal prosecutions but not to revocation proceedings are the right to a jury and the right that guilt be proven beyond a reasonable doubt rather than by a mere preponderance of the evidence.

Court did not abuse its discretion in revoking his probation, and we affirm the judgment of the Circuit Court.

*Conclusion*

The judgment of the Circuit Court is affirmed.


_____
JERRY L. SMITH, JUDGE